PRESENT:  All the Justices

DONTE LAMAR JONES

v.  Record No. 131385

COMMONWEALTH OF VIRGINIA

OPINION BY
JUSTICE D. ARTHUR KELSEY
February 2, 2017

FROM THE CIRCUIT COURT OF YORK COUNTY
Richard Y. AtLee, Jr., Judge

Acting on a petition for certiorari, the United States Supreme Court in *Jones v. Virginia*, 136 S. Ct. 1358 (2016), vacated and remanded *Jones v. Commonwealth* (*Jones I*), 288 Va. 475, 763 S.E.2d 823 (2014), for our reconsideration in light of *Montgomery v. Louisiana*, 577 U.S. ___, 136 S. Ct. 718 (2016).  Having done so, we now reinstate our holding in *Jones I*, subject to the qualifications made herein, and affirm the trial court's denial of the motion to vacate filed by Donte Lamar Jones.

I.

In 2000, Jones and an accomplice, both armed and wearing masks, robbed two night clerks at a convenience store.  They ordered both clerks to lie down on the floor.  After his accomplice took roughly $35 from the cash register and the two were fleeing the scene, Jones shot one of the clerks in the back as she laid on the floor.  The following day, Jones stated, "I think I paralyzed the bitch." J.A. at 9-10.  In fact, however, Jones's gunshot wound had killed her.  At the time of the offense, Jones was a few months away from his 18th birthday and was on supervised juvenile probation for a felony offense committed when he was 15 years old.

After his arrest, Jones entered an *Alford* guilty plea to capital murder and several related charges.  He executed a plea agreement stipulating that he would receive a life sentence "without the possibility of parole" on the capital murder charge and a term of years to be determined by the court on the remaining charges.  *Id.* at 45.  The plea agreement also stipulated that Jones

agreed "to waive any and all rights of appeal with regard to any substantive or procedural issue involved in this prosecution." *Id.* at 44.

The trial court held a sentencing hearing and received a presentence report from a probation officer. The court imposed the life sentence pursuant to the plea agreement, as well as a 68-year term of incarceration on the remaining 10 felony charges. The sentencing order concluded: "TOTAL SENTENCE IMPOSED: LIFE + 68 YEARS" followed by "TOTAL SENTENCE SUSPENDED: NONE." *Id.* at 53.

After serving 12 years of his sentence, Jones filed a motion to vacate his life sentence in the trial court, claiming that it violated the principles articulated in *Miller v. Alabama*, 567 U.S. ___, 132 S. Ct. 2455 (2012), which was issued by the United States Supreme Court 11 years after his convictions. In *Miller*, two juvenile defendants received mandatory life sentences without the possibility of parole. Under applicable law, the state sentencing courts had no power to suspend in whole or in part either of the two mandatory life sentences. *See* Ala. Code § 15-22-50 ("The court shall have no power to suspend the execution of sentence imposed upon any [convicted] person . . . whose punishment is fixed at death or imprisonment in the penitentiary for more than 15 years.");[1] Ark. Code Ann. § 5-4-104(e)(1)(A)(i) ("The court shall not suspend imposition of sentence as to a term of imprisonment nor place the defendant on probation for . . . [c]apital murder.").[2]

---

[1] *See also Belote v. State*, 185 So. 3d 1154, 1155 (Ala. Crim. App. 2015) (finding that "because the circuit court imposed a sentence of 16 years' imprisonment, pursuant to § 15-22-50, the circuit court was without authority to suspend the execution of [appellant's] sentence"); *Little v. State*, 129 So. 3d 312, 313 (Ala. Crim. App. 2012) (holding that, pursuant to Ala. Code § 15-22-50, the trial court was "without jurisdiction" to impose a completely suspended 20-year sentence).

[2] *See also State v. Colvin*, 427 S.W.3d 635, 638 (Ark. 2013) (noting that Ark. Code Ann. § 5-4-104 "prohibit[s] probation and the suspended imposition of sentence for the offense[] of capital murder").

*Miller* held that "a judge or jury must have the *opportunity* to consider mitigating circumstances before imposing the harshest possible penalty for juveniles." *Miller*, 567 U.S. at ___, 132 S. Ct. at 2475 (emphasis added). A "mandatory sentencing" scheme that eliminates this opportunity, *Miller* concluded, could be constitutional only if at some later date the prisoner is afforded the "*possibility* of parole" — not the guarantee of it. *Id.* (emphasis added).

*Miller* was quite clear about what it meant by a mandatory sentence: "Such mandatory penalties, by their nature, *preclude* a sentencer from taking account of an offender's age and the wealth of characteristics and circumstances attendant to it." *Id.* at ___, 132 S. Ct. at 2467 (emphasis added). *Miller* thus concluded that, "[b]y making youth (and all that accompanies it) irrelevant" to imprisonment for life without parole, mandatory, life-without-parole sentences for juveniles violate the Eighth Amendment. *Id.* at ___, 132 S. Ct. at 2469. Underlying this holding was the necessary premise that it could only apply to an actual, not a suspended, life-without-parole sentence imposed upon a juvenile offender because only the former, not the latter, would involve "condemning him or her to die in prison." *Montgomery*, 577 U.S. at ___, 136 S. Ct. at 726 (summarizing *Miller*).

Relying on *Miller*, Jones's motion before the trial court expressly stated that it "only deal[t] with the Capital Murder charge." J.A. at 56. His motion also proposed an "alternative option" to his request for vacatur of the life sentence. *Id.* at 61. "Pursuant to Code § 19.2-303," Jones argued, the trial court "'may suspend imposition of sentence or suspend the sentence in whole or part' on the Capital Murder conviction." *Id.* (quoting Code § 19.2-303); *see also id.* at 55-56. The motion to vacate concluded with this prayer for relief: "Suspend the mandatory life sentence without parole or declare Mr. Jones's conviction for Capital Murder void in the absence of any legal punishment the Court can lawfully impose." *Id.* at 62.

3

The motion to vacate, however, made no factual proffer and left the question whether to hold an evidentiary hearing entirely within the discretion of the trial court. The motion requested that the trial court "grant Mr. Jones an evidentiary hearing on the claims presented in this Motion" only "if the Court determine[d] there [was] a need for further factual development." *Id.* The trial court denied the motion "after review of the case file and the defendant's motion," observing that Jones presented "nothing new in mitigation of the offense." *Id.* at 65.

On appeal of the trial court's denial of the motion to vacate, we "h[e]ld that because the trial court ha[d] the ability under Code § 19.2-303 to suspend part or all of the life sentence . . . , the sentencing scheme applicable to Jones's conviction was not a mandatory life without the possibility of parole scheme." *Jones I*, 288 Va. at 477, 763 S.E.2d at 823. Thus, we reasoned, *Miller* was inapplicable to the Virginia sentencing law at issue "even if it is to be applied retroactively." *Id.* at 481, 763 S.E.2d at 826.

We came to this conclusion because Virginia law does not preclude a sentencing court from considering mitigating circumstances, whether they be age or anything else. To be sure, sentencing statutes specifically authorize a trial court to do so, even to the point of suspending entirely a life sentence so that the offender never spends a day in prison. *See* Code § 19.2-303. Nor does Virginia law make "youth (and all that accompanies it) irrelevant" to the court's sentencing discretion. *Miller*, 567 U.S. at ___, 132 S. Ct. at 2469. Nothing in the statutory suspension power suggests that the offender's youth should be legally irrelevant to the exercise of the sentencing court's discretion.

Dissatisfied with our reasoning, Jones filed a petition for certiorari to the United States Supreme Court arguing that he never truly had the mitigation opportunity. Despite the unqualified text of Code § 19.2-303 authorizing the power of suspension and our unanimous

4

opinion applying it to his case, Jones argued that we were plainly wrong: "Because life without parole is the *only* sentence (other than death) authorized under Virginia's capital murder statute, the Virginia Supreme Court's characterization of that sentence as 'not mandatory' rings hollow." Pet. Cert. at 9 n.2 (emphasis in original).

Jones's petition for certiorari did not call attention to conflicting prior precedent or suggest that we had abruptly changed course in established legal doctrine governing the suspension power of a sentencing court. Neither did his petition put forward any legal analysis suggesting that our application of Code § 19.2-303 to life sentences rested upon a flawed statutory interpretation. Instead, he merely argued that the power to suspend a life sentence (even to the point of not serving a day in prison) was an insufficient "opportunity" for the sentencing court to take into account "mitigating circumstances before imposing the harshest possible penalty for juveniles." *Miller*, 567 U.S. at ___, 132 S. Ct. at 2475; *see also* Pet. Cert. at 13-15.

Before ruling on the merits of Jones's petition, the United States Supreme Court issued *Montgomery v. Louisiana*, which decided the "question whether *Miller*'s prohibition on mandatory life without parole for juvenile offenders indeed did announce a new substantive rule that, under the Constitution, must be retroactive." 577 U.S. at ___, 136 S. Ct. at 732. *Montgomery* held that *Miller* was retroactive, and thus, juvenile defendants "must be given the *opportunity* [at the time of sentencing] to show their crime did not reflect irreparable corruption; and, *if it did not*, their *hope* for some years of life outside prison walls must be restored" by the possibility of future parole. *Id.* at ___, 136 S. Ct. at 736-37 (emphases added).[3] Like the

---

[3] *Montgomery* acknowledged that "*Miller* did not require trial courts to make a finding of fact regarding a child's incorrigibility" and "did not impose a formal factfinding requirement" on this mitigation issue. *Montgomery*, 577 U.S. at ___, 136 S. Ct. at 735.

sentencing statutes reviewed in *Miller*, the Louisiana law addressed in *Montgomery* forbade the sentencing court from suspending in whole or in part the life sentence without parole in capital cases. *See* La. Stat. Ann. § 14:30(C)(1) ("If the district attorney seeks a capital verdict, the offender shall be punished by death or life imprisonment at hard labor without benefit of parole, probation, *or suspension of sentence* . . . ." (emphasis added)).

The holding in *Montgomery* tracked that in *Miller*: State law cannot impose "mandatory" penalties that make "youth (and all that accompanies it) irrelevant" to the decision to imprison a juvenile for life without parole. *Montgomery*, 577 U.S. at ___, 136 S. Ct. at 726 (quoting *Miller*, 567 U.S. at ___, 132 S. Ct. at 2469). Mandatory sentencing statutes, "by their nature, *preclude* a sentencer from taking account of an offender's age and the wealth of characteristics and circumstances attendant to it." *Miller*, 567 U.S. at ___, 132 S. Ct. at 2467 (emphasis added). It was this legal preclusion that *Miller* and *Montgomery* deemed unconstitutional. If a mandatory sentencing statute has that effect, it can survive constitutional scrutiny only if the "possibility of parole," *id.* at ___, 132 S. Ct. at 2469, gives the prisoner a "hope" that he will not "die in prison," *Montgomery*, 577 U.S. at ___, 136 S. Ct. at 736-37.

Roughly 40 petitions for certiorari implicating *Miller* were before the United States Supreme Court at the same time as Jones's petition. The Court decided them all on the same day and issued a two-sentence order in each case, stating as applicable, "Petition for writ of certiorari granted. Judgment vacated, and case remanded . . . for further consideration in light of *Montgomery v. Louisiana*, 577 U. S. ___, 136 S. Ct. 718, 193 L. Ed. 2d 599 (2016)." *Jones v. Virginia*, ___ U.S. ___, ___, 136 S. Ct. 1358, 1358 (2016) (per curiam).[4]

---

[4] *See also Baker v. Alabama*, 136 S. Ct. 1378 (2016); *Black v. Alabama*, 136 S. Ct. 1367 (2016); *Burgos v. Michigan*, 136 S. Ct. 1357 (2016); *Carp v. Michigan*, 136 S. Ct. 1355 (2016); *Click v. Alabama*, 136 S. Ct. 1363 (2016); *Contreras v. Davis*, 136 S. Ct. 1363 (2016); *Cook v.*

6

In each of these orders, Justices Thomas and Alito filed a concurring statement

explaining the Court's precise holding:

> The Court has held the petition in this and many other cases pending the decision in *Montgomery v. Louisiana*, 577 U. S. ___, 136 S. Ct. 718, 193 L. Ed. 2d 599 (2016). In holding this petition and now vacating and remanding the judgment below, the Court has not assessed whether petitioner's asserted entitlement to retroactive relief "is properly presented in the case." *Id.*, at ___, 136 S. Ct. at 732, 193 L. Ed. 2d at 617.

*Jones v. Virginia*, ___ U.S. ___, ___, 136 S. Ct. 1358, 1358 (2016) (Thomas, J., concurring).

The concurrence clarified, without any suggestion to the contrary in the majority's form order,

what the remand order did not do:

> On remand, courts should understand that the Court's disposition of this petition does not reflect any view regarding petitioner's entitlement to relief. The Court's disposition does not, for example, address whether an adequate and independent state ground bars relief, *whether petitioner forfeited or waived any entitlement to relief* (by, for example, entering into a plea agreement waiving any entitlement to relief), or *whether petitioner's sentence actually qualifies as a mandatory life without parole sentence.*

*Id.* (emphases added).

---

*Michigan*, 136 S. Ct. 1358 (2016); *Davis v. Michigan*, 136 S. Ct. 1356 (2016); *Duke v. Alabama*, 136 S. Ct. 1378 (2016); *Dunlap v. Alabama*, 136 S. Ct. 1367 (2016); *Flynn v. Alabama*, 136 S. Ct. 1371 (2016); *Forman v. Alabama*, 136 S. Ct. 1372 (2016); *Foster v. Alabama*, 136 S. Ct. 1371 (2016); *Gardner v. Alabama*, 136 S. Ct. 1369 (2016); *Gibson v. Louisiana*, 136 S. Ct. 1360 (2016); *Hogan v. Alabama*, 136 S. Ct. 1370 (2016); *Iiams v. Alabama*, 136 S. Ct. 1370 (2016); *Ingram v. Alabama*, 136 S. Ct. 1372 (2016); *Jacobs v. Louisiana*, 136 S. Ct. 1362 (2016); *Lewis v. Michigan*, 136 S. Ct. 1357 (2016); *Livas v. Louisiana*, 136 S. Ct. 1362 (2016); *Martin v. Smith*, 136 S. Ct. 1365 (2016); *Matthews v. Alabama*, 136 S. Ct. 1366 (2016); *McWilliams v. Alabama*, 136 S. Ct. 1373 (2016); *Pratt v. Alabama*, 136 S. Ct. 1368 (2016); *Presley v. Alabama*, 136 S. Ct. 1399 (2016); *Reeves v. Alabama*, 136 S. Ct. 1369 (2016); *Riley v. Louisiana*, 136 S. Ct. 1359 (2016); *Sanchez v. Pixley*, 136 S. Ct. 1361 (2016); *Storey v. Alabama*, 136 S. Ct. 1373 (2016); *Stubbs v. Alabama*, 136 S. Ct. 1368 (2016); *Tapp v. Louisiana*, 136 S. Ct. 1355 (2016); *Thompson v. Roy*, 136 S. Ct. 1375 (2016); *Tolliver v. Louisiana*, 136 S. Ct. 1354 (2016); *Tyler v. Louisiana*, 136 S. Ct. 1356 (2016); *Williams v. Alabama*, 136 S. Ct. 1365 (2016); *Williams v. Louisiana*, 136 S. Ct. 1360 (2016); *Wilson v. Alabama*, 136 S. Ct. 1366 (2016); *Young v. Louisiana*, 136 S. Ct. 1359 (2016).

II.

On remand, Jones seeks a vacatur of his life sentence on several interdependent grounds. Under his view of *Miller* and *Montgomery*, Jones contends that we must order the trial court to resentence him to a specific term of years (not life) and to ensure that the term of incarceration is not long enough to be the "functional equivalent of a life sentence." Appellant's Remand Reply Br. at 9, 14. We find none of Jones's arguments persuasive.[5]

A.

Jones first argues that we should hold — contrary to *Jones I* — that his life sentence was a mandatory life sentence in violation of *Miller*. We decline the invitation to do so.

1.

As *Jones I* observed, the General Assembly has carefully distinguished between "mandatory minimum sentence[s]" that cannot be suspended and non-mandatory minimum sentences that can be. *Jones I*, 288 Va. at 479-80, 763 S.E.2d at 825.[6] "Only where the General

_____

[5] Jones's motion to vacate filed in the trial court expressly stated that the motion "only deal[t] with the Capital Murder charge." J.A. at 56. Consequently, Rule 5:25 precludes Jones from challenging on appeal any of the sentences imposed on his other convictions. *See Floyd v. Commonwealth*, 219 Va. 575, 584, 249 S.E.2d 171, 176 (1978) (holding that appellate courts will not consider an argument that differs from the specific argument presented to the trial court even if it relates to the same general issue). Jones does not assert any grounds for invoking the "good cause" or "ends of justice" exceptions under Rule 5:25, and we will not sua sponte raise them on his behalf. *See Toghill v. Commonwealth*, 289 Va. 220, 239-40, 768 S.E.2d 674, 684 (2015) (McClanahan, J., concurring); *see also Widdifield v. Commonwealth*, 43 Va. App. 559, 564, 600 S.E.2d 159, 162 (2004) (en banc); *Edwards v. Commonwealth*, 41 Va. App. 752, 761, 589 S.E.2d 444, 448 (2003) (en banc).

[6] *See* Code § 18.2-61(B)(2) (rape by adult offender) for an example of a life sentence that cannot be suspended. For non-life sentences — of varying severity — that cannot be suspended see, for example, Code §§ 3.2-4212(D) (unlawful sale/transport of certain tobacco products), 16.1-253.2(A) (repeat violations of certain types of protective orders), 18.2-36.1(B) and -36.2(B) (aggravated involuntary manslaughter), 18.2-46.3:3 (gang-related activity in gang-free zones), 18.2-51.1 (malicious wounding of law enforcement officers or other first responders), 18.2-57 (certain types of assaults and batteries), 18.2-60.4(A) (repeat violations of certain protective orders), 18.2-61(B)(1) (rape when offender is more than three years the

Assembly has prescribed a mandatory minimum sentence imposing an inflexible penalty has it

'divested trial judges of all discretion respecting punishment.'"  *Id.* at 479, 763 S.E.2d at 825

(quoting *In re: Commonwealth*, 229 Va. 159, 163, 326 S.E.2d 695, 697 (1985)).[7]  What is true

for term-of-years sentences is just as true for life sentences.  Unless a statute precludes the

exercise of such discretion, Virginia trial courts can — and do — suspend life sentences.[8]  Jones

---

victim's senior), 18.2-67.1(B)(1) and -67.2(B)(1) (forcible sex acts when offender is more than three years the victim's senior), 18.2-121 (property damage motivated by a victim's "race, religious conviction, color or national origin"), 18.2-154 (shooting a firearm at certain types of vehicles), 18.2-186.4 (use of law enforcement officer's identity with intent to coerce), 18.2-248 (certain first or repeat drug manufacture, sale, transportation, or distribution offenses), 18.2-248.01 and -248.03 (same), 18.2-255 (distribution of marijuana to minors), 18.2-255.2 (repeat drug distribution on school campus), 18.2-270 (repeat DWI convictions), 18.2-308.1 (possession of explosive device on school campus), 18.2-308.2:2 (thwarting criminal background checks for firearms), 18.2-374.1 (production of child pornography), 18.2-374.1:1 (repeat reproduction or transmission of child pornography), 18.2-374.3 (certain electronic solicitation and other child pornography crimes), 46.2-341.28 (driving a commercial vehicle while intoxicated), 46.2-357(B) (habitual operation of a motor vehicle while license revoked), 46.2-391 (revocation of license for multiple DWI convictions), 46.2-865.1 (street racing resulting in death of another), 53.1-203 (escape by a felon from a correctional facility).  Notwithstanding the girth of this list, when "[c]lassifying state guidelines systems along a continuum from most voluntary to most mandatory, Virginia ranks the most voluntary of [Minnesota, Michigan, and Virginia]."  Va. Crim. Sent'g Comm'n, Annual Report 95 (2014), http://www.vcsc.virginia.gov/2014Annual Report.pdf.

[7] The phrase "[m]andatory minimum" in the Virginia Code "means, for purposes of imposing punishment upon a person convicted of a crime, that the court shall impose the entire term of confinement, the full amount of the fine and the complete requirement of community service prescribed by law."  Code § 18.2-12.1.  "The court *shall not suspend* in full or in part any punishment described as mandatory minimum punishment."  *Id.* (emphasis added).

[8] *See, e.g.*, *Tyson v. Commonwealth*, Record No. 140917, 2015 Va. Unpub. LEXIS 6, at *1 (Aug. 24, 2015) (unpublished) (life sentence with "all but 13 years suspended"); *Hamilton v. Director of the Dep't of Corrs.*, Record No. 131738, 2014 Va. LEXIS 201, at *1 (June 6, 2014) (unpublished) (two life sentences plus 68-year term sentence "with all but twenty-two years suspended"); *Harris v. Commonwealth*, 279 Va. 123, 125 n.2, 128, 688 S.E.2d 279, 280 n.2, 282 (2010) (suspension of life and multiple term-of-years sentences to a total of "eight years of the life sentence for the abduction conviction"); *Moore v. Hinkle*, 259 Va. 479, 485, 527 S.E.2d 419, 422 (2000) (suspension of "all but ten years" of a life sentence); *Jefferson v. Commonwealth*, Record No. 2172-12-2, 2013 Va. App. LEXIS 311, at *2 (Oct. 29, 2013) (unpublished) (suspension of all but 20 years of life sentence); *White v. Commonwealth*, Record No. 1998-96-2, 1997 Va. App. LEXIS 613, at *4 (Sept. 23, 1997) (unpublished) (suspension of two life sentences and fifteen years of a thirty-year term to "twenty years of active time").

has offered no persuasive reason to us, either before or after *Jones I*, in support of the thesis that life sentences are exempt from the judicial power of suspension. Consequently, we reaffirm *Jones I*'s holding that, under Virginia law, "the trial court ha[d] the ability under Code § 19.2-303 to suspend part or all of the life sentence," and thus, "the sentencing scheme applicable to Jones's conviction was not a mandatory life without the possibility of parole scheme." 288 Va. at 477, 763 S.E.2d at 823.

2.

Whether a state sentencing statute authorizes or precludes judicial discretion is a matter solely governed by state law. In the companion case addressed in the *Miller* opinion, the United States Supreme Court reaffirmed that whether a state sentencing statute is mandatory (that is, precludes the possibility of mitigation of the prescribed punishment) is a decision to be made by "state courts." *Miller*, 567 U.S. at ___ n.2, 132 S. Ct. at 2462 n.2. When a state court treats a sentencing statute as "mandatory," the United States Supreme Court will "abide by that interpretation of state law." *Id.*[9]

---

[9] *See also Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975) ("This Court . . . repeatedly has held that state courts are the ultimate expositors of state law. . . . Accordingly, we accept as binding the Maine Supreme Judicial Court's construction of state homicide law."); *Murdock v. Memphis*, 87 U.S. (20 Wall.) 590, 626 (1875) ("The State courts are the appropriate tribunals, as this court has repeatedly held, for the decision of questions arising under their local law, whether statutory or otherwise."). *See generally Winters v. New York*, 333 U.S. 507 (1948) (noting the United States Supreme Court's respect for and deference to a state court's interpretation of that state's own policy considerations underlying its laws); 18 Susan Bandes et al., Moore's Federal Practice § 133.14[1], at 133-17 (Matthew Bender 3d ed. 2016) ("A federal decision based on a federal judicial construction of state law may not preclude reconstruction of the law by that state's own courts. The highest court of each state is the principal expositor of that state's law, and therefore the state court may not be bound by a federal construction of that state's laws." (footnote omitted)); 22 Drew S. Days, III, *id.* § 406.20[3][b][ii], at 406-80 to -81 ("Matters of state law are not the [United States Supreme] Court's concern; rather, the state courts are the appropriate tribunals to decide questions arising under their local law." (footnote omitted)).

It follows that where, as here, a State's highest court treats a sentencing statute as non-mandatory (that is, provides an opportunity to seek mitigation of the prescribed punishment), the United States Supreme Court would abide by that interpretation of state law. We thus infer no disapproval in either *Miller* or *Montgomery* of our interpretation of Virginia's sentencing statutes. Nor do we believe it proper to read into the remand order "any view" on the question of "whether petitioner's sentence actually qualified as a mandatory life without parole sentence." *Jones*, ___ U.S. at ___, 136 S. Ct. at 1358 (Thomas, J., concurring).

B.

Jones frames his next argument in equally absolute, but flawed, terms. "*Montgomery* confirmed," Jones argues, "that *Miller* requires a hearing where youth and its attendant characteristics are considered as sentencing factors in order to separate those juveniles who may be sentenced to life without parole from those who may not. Virginia law does not provide for such hearing." Appellant's Remand Br. at 8. We disagree on several levels with this reasoning.

1.

As *Montgomery* explained, the mandatory, life-without-parole sentence under Louisiana law violated *Miller* because it gave the juvenile defendant "no *opportunity* to present mitigation evidence to justify a less severe sentence." *Montgomery*, 577 U.S. at ___, 136 S. Ct. at 726 (emphasis added).[10] Like the sentencing statutes in *Miller*, the Louisiana statute imposing a

---

[10] In a post-argument submission to us, Jones contends that the United States Supreme Court has recently signaled a far broader interpretation of *Miller* and *Montgomery*. That signal, however, came from only one Justice in a concurrence to a summary opinion granting certiorari, vacating the lower court's decision, and remanding without any discussion of the merits of the petition. *See Tatum v. Arizona*, ___ U.S. ___, ___, 137 S. Ct. 11, 13 (2016) (Sotomayor, J., concurring) (expanding *Montgomery* to require "more than mere consideration of a juvenile offender's age" but to require a particular finding that the offender "is a child 'whose crimes reflect transient immaturity' or is one of 'those rare children whose crimes reflect irreparable corruption'" (citation omitted)). The majority did not mention this view, and two other Justices

11

sentence of life imprisonment on Montgomery was not subject to suspension in whole or in part by the sentencing court. *See* La. Stat. Ann. § 14:30(C)(1). Thus, as was the case in *Miller*, the state sentencing law at issue in *Montgomery* precluded the juvenile defendant from either seeking mitigation of his sentence or offering any evidence in support of such a request.

In Virginia, however, a criminal defendant has a statutorily provided opportunity to present mitigation evidence at his sentencing hearing.[11] If relevant and admissible, evidence in mitigation of punishment can be presented unless the punishment imposed is a mandatory, fixed sentence that cannot be varied in any degree.[12] This principle is no less true in Jones's case than

---

disclaimed it. *See id.* at *5-6 (Alito, J., dissenting). Our colleagues in dissent find it relevant that the Court duplicated the *Tatum* summary opinion in *Arias v. Arizona*, ___ U.S. ___, 137 S. Ct. 370 (2016), another summary opinion issued the same day. We are unpersuaded that either *Tatum* or *Arias* has any controlling precedential impact.

[11] *See* Code § 19.2-264.4(B) (stating that the sentencing court in a capital case may consider evidence of "history and background of the defendant, and any other facts in mitigation of the offense" including, inter alia, the "age of the defendant at the time of the commission of the capital offense" and the "capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law"); *Thomas v. Commonwealth*, 244 Va. 1, 7, 419 S.E.2d 606, 609 (1992) (acknowledging that Virginia's death penalty statute provides for "individualized consideration" of capital defendants because age is a "statutorily prescribed mitigating factor the jury may consider" in sentencing); John L. Costello, Virginia Criminal Law and Procedure § 63.5[1], at 1118 (4th ed. 2008) ("The Commonwealth may not attempt to preclude the defendant's offer of evidence in extenuation and mitigation by declining to put on evidence in aggravation."); *id.* § 63.7[3], at 1130-31 ("[T]he trial judge must instruct the jury concerning the duty to consider matters in mitigation to the extent they found them supported by evidence of record. . . . Under the statute, the defendant's age and grasp of moral considerations are relevant . . . ." (footnotes omitted)); *accord* Code § 19.2-295.1 (stating that defendant in non-capital case may present *any* "relevant, admissible evidence related to punishment"); Code § 19.2-299(A) (allowing a defendant to offer "any additional facts" bearing on sentencing in response to pre-sentence report offered in bench trials or non-capital jury trials); Rule 3A:17.1(e)(4) (allowing defendant convicted of non-capital felony offense to produce "relevant, admissible evidence related to punishment"); *Commonwealth v. Shifflett*, 257 Va. 34, 43-44, 510 S.E.2d 232, 236 (1999) (stating that the trial court "may be guided" by mitigating factors listed in the capital sentencing statute, Code § 19.2-264.4, when sentencing non-capital offenders).

[12] "[U]nder the Virginia practice, the punishment as fixed by the jury is not final or absolute, since its finding on the proper punishment is subject to suspension by the trial judge, in whole or in part, on the basis of any mitigating facts that the convicted defendant can marshal."

12

in any other criminal case. Moreover, Virginia's sentencing laws — unlike the laws found unconstitutional in *Miller* — authorized the sentencing court to suspend Jones's life sentence in whole or in part. Nothing in Virginia law denied Jones the opportunity to request a suspension and to present evidence of his "youth and attendant characteristics," *Montgomery*, 577 U.S. at ___, 136 S. Ct. at 734, in support of a suspended sentence. Jones was never denied this constitutionally required opportunity. For the certainty of a plea agreement, he simply chose not to exercise it.

2.

Jones's argument to the contrary seems oblivious to the fact that he entered into a plea agreement in which he *stipulated* to a life sentence "without the possibility of parole" on the capital murder charge. *See* J.A. at 45.[13] He also agreed "to waive any and all rights of appeal with regard to any substantive or procedural issue involved in this prosecution." *Id.* at 44. Consistent with the prevailing view, *see* 7 Wayne R. LaFave et al., Criminal Procedure § 27.5(c), at 86 (4th ed. 2015) (observing that "[m]ost courts, including all twelve federal courts of appeals with criminal jurisdiction, uphold appeal waivers"),[14] Virginia has long held that a criminal

---

*Vines v. Muncy*, 553 F.2d 342, 349 (4th Cir. 1977). Furthermore, "[a] defendant convicted of a felony has an absolute right to have a presentence investigation and report prepared upon his request and submitted to the court prior to the pronouncement of sentence." *Duncan v. Commonwealth*, 2 Va. App. 342, 345-46, 343 S.E.2d 392, 394 (1986). "The presentence report generally provides the court with mitigating evidence." *Id.* at 345, 343 S.E.2d at 394.

[13] At no point in the trial court or during this appeal has Jones asserted that he entered into his plea agreement involuntarily.

[14] As most courts have held, "because other important constitutional rights of the defendant may be waived by plea agreement, the right to appeal, which is not even guaranteed by the Constitution, but by statute, should also be subject to waiver." *Congdon v. Commonwealth*, 57 Va. App. 692, 696, 705 S.E.2d 526, 528 (2011) (quoting 7 Wayne R. LaFave, Criminal Procedure § 27.5(c), at 75-76 (3d ed. 2007)); *see also United States v. Lo*, 839 F.3d 777, 783 (9th Cir. 2016); *United States v. Rodriguez*, 659 Fed. Appx. 671, 673 (2d Cir. 2016) (unpublished); *United States v. Haslam*, 833 F.3d 840, 844 (7th Cir. 2016); *United States v. Betancourt-Pérez*, 833 F.3d 18, 22 (1st Cir. 2016); *United States v. Fazio*, 795 F.3d 421, 425 (3d Cir. 2015); *United*

defendant can waive "his appeal of right" if the circumstances demonstrate "his decision to waive his appeal was made knowingly, voluntarily, and intelligently," *Davidson v. Commonwealth*, 244 Va. 129, 131, 419 S.E.2d 656, 658 (1992) (accepting waiver of right to appeal capital conviction but applying a specific statutory exception mandating limited appellate review of all death sentences).[15]

In short, Jones was never denied the opportunity to offer mitigation evidence of his "youth and attendant characteristics," *Montgomery*, 577 U.S. at ___, 136 S. Ct. at 734, in support of a suspended sentence. He affirmatively waived that right as part of a negotiated plea agreement. 24 Daniel R. Coquillette et al., Moore's Federal Practice § 611.08[4][a], at 611-84 (Matthew Bender 3d ed. 2016) ("There is a 'presumption that legal rights generally, and evidentiary rights specifically, are subject to waiver by voluntary agreement of the parties.' A plea of guilty entered on the competent advice of counsel will be held to waive all constitutional objections to the conviction . . . unless the jurisdiction in which the case arises specifically permits appeals on those issues, even after a plea of guilty." (footnote omitted) (quoting *United States v. Mezzanatto*, 513 U.S. 196, 203 (1995))). He also expressly waived his right to challenge his sentence on direct appeal and, *a fortiori*, on collateral attack. His present argument

_____

States v. Shemirani*, 802 F.3d 1, 2 (D.C. Cir. 2015); *United States v. Archie*, 771 F.3d 217, 221 (4th Cir. 2014), *cert. denied*, *Archie v. United States*, 135 S. Ct. 1579 (2015), *sentence vacated*, 2016 U.S. Dist. LEXIS 81872, at *2 (E.D.N.C. June 23, 2016); *United States v. Keele*, 755 F.3d 752, 754 (5th Cir. 2014), *cert. denied*, 135 S. Ct. 1174 (2015); *United States v. Gibney*, 519 F.3d 301, 305-06 (6th Cir. 2008); *United States v. Smith*, 500 F.3d 1206, 1210 (10th Cir. 2007); *United States v. Bascomb*, 451 F.3d 1292, 1294 (11th Cir. 2006); *United States v. Blick*, 408 F.3d 162, 168 (4th Cir. 2005); *United States v. Lemaster*, 403 F.3d 216, 219-20 (4th Cir. 2005); *United States v. Andis*, 333 F.3d 886, 889 (8th Cir. 2003) (en banc).

[15] *See also Hudson v. Commonwealth*, 267 Va. 29, 33, 590 S.E.2d 362, 364 (2004); *Emmett v. Commonwealth*, 264 Va. 364, 370, 569 S.E.2d 39, 43-44 (2002); *Patterson v. Commonwealth*, 262 Va. 301, 306, 551 S.E.2d 332, 335 (2001).

thus amounts to a challenge that he was never afforded an opportunity to present evidence that he never offered and to request relief that he never sought.

Putting aside for the moment Jones's void-ab-initio contention, which we address in Part II(C) of this opinion, we fail to see how his *Miller-Montgomery* claim can be immunized from waiver principles that govern all other constitutional challenges. *See, e.g.*, *McDonald v. Commonwealth*, 274 Va. 249, 255, 645 S.E.2d 918, 921 (2007) (holding that appellant had waived his facial constitutional challenge under Rule 5:25); *Powell v. Commonwealth*, 182 Va. 327, 336, 28 S.E.2d 687, 691 (1944) (affirming express waiver of various constitutional rights, including rights to counsel, to trial by jury, to sequester the jury, and to speedy trial); *Brown v. Epps*, 91 Va. 726, 737, 21 S.E. 119, 122 (1895) (observing, in a Sixth Amendment challenge, that it is "beyond a doubt" that "a prisoner may waive many of his constitutional rights").

Nothing in *Montgomery* undermines settled waiver principles. Nor does the remand order do so. As the concurring Justices pointed out, the remand order disclaims any position whatsoever on "whether an adequate and independent state ground bars relief" or "*whether petitioner forfeited or waived any entitlement to relief* (by, for example, entering into a plea agreement waiving any entitlement to relief)." *Jones*, ___ U.S. at ___, 136 S. Ct. at 1358 (emphasis added). We are thus free to employ traditional waiver principles applicable to plea agreements. Those principles, in our opinion, are dispositive in this case.

C.

Jones next addresses the fact that, at his original sentencing, he never asked for a mitigation hearing, never proffered any mitigation evidence, expressly stipulated to his life sentence as a condition of his plea agreement, and affirmatively waived any appellate challenge to his conviction or sentence. That is of no concern, Jones claims, because his sentence was void

15

ab initio — a doctrinal "royal flush" that outranks any lesser hands of procedural default, estoppel, or even judicial stipulations.

This assertion, however, presupposes that the trial court violated the Eighth Amendment by accepting Jones's *Alford* guilty plea and by imposing the life sentence Jones agreed to in the plea agreement. As *Montgomery* explained, a mandatory, life-without-parole sentence violates *Miller* when it provides the juvenile defendant "no *opportunity* to present mitigation evidence to justify a less severe sentence." *Montgomery*, 577 U.S. at ___, 136 S. Ct. at 726 (emphasis added). Under Virginia law, Jones had such an opportunity. *See supra* Part II.B. He simply failed to exercise it.

But even if, as Jones's logic implies, the trial court — over a decade ago — had a constitutional duty to force Jones to violate his plea agreement by requesting a partial or complete suspension of his stipulated sentence and then, whether requested or not, to order Jones to present mitigation evidence in support of an unrequested suspension, we would not hold that such a violation renders his sentence void ab initio. Nothing in Virginia or federal law compels us to do so, and we can think of no good reason why we should.

1.

In this case, as in most, whether an alleged error by a trial court renders its order void ab initio or merely voidable turns on the subtle, but crucial, distinction deeply embedded in Virginia law "between a court lacking jurisdiction to act upon a matter and the court, while properly having jurisdiction, nonetheless erring in its judgment." *Kelley v. Stamos*, 285 Va. 68, 75, 737 S.E.2d 218, 221-22 (2013). "In this context, a matter is void either because it has been null from the beginning (void ab initio) or because it is declared null although seemingly valid until that point in time (voidable)." *Nelson v. Warden*, 262 Va. 276, 285, 552 S.E.2d 73, 77-78 (2001).

16

Significantly, "very few judgments are totally void and subject to attack at any time." Costello, *supra* note 11, § 62.12, at 1087.

This distinction guards against the improper elevation of a court's failure "to comply with the requirements for exercising its authority to the same level of gravity as a lack of subject matter jurisdiction." *Nelson*, 262 Va. at 281, 552 S.E.2d at 75; *see also Burrell v. Commonwealth*, 283 Va. 474, 480, 722 S.E.2d 272, 275 (2012). In this sense, a trial court has "jurisdiction to err" just as an appellate court has jurisdiction to correct such errors. *Parrish v. Jessee*, 250 Va. 514, 521, 464 S.E.2d 141, 146 (1995) (citation omitted).

As subtle as this distinction may be, it has a sharp impact on criminal cases. If a criminal defendant fails to preserve an issue in the trial court, he can waive claimed violations of his constitutional right to be free of unreasonable searches and seizures under the Fourth Amendment,[16] of his *Miranda* rights under the Fifth Amendment,[17] of his confrontation and

---

[16] *See, e.g.*, *McGhee v. Commonwealth*, 280 Va. 620, 625, 701 S.E.2d 58, 61 (2010) (refusing to consider appellant's Fourth Amendment argument based on developments in search-and-seizure law because appellant had not "object[ed] to the search incident to arrest below"); *Hudson v. Commonwealth*, 266 Va. 371, 375, 585 S.E.2d 583, 585 (2003) (finding appellant's Fourth Amendment argument "barred from consideration on appeal under Rule 5:25" because appellant "present[ed] this argument for the first time on appeal"); *see also* Code § 19.2-266.2(A)-(B) (providing that a defendant waives his right to challenge the admission of evidence allegedly obtained in violation of the Fourth Amendment if he does not file a "motion or objection in a proceeding in circuit court . . . in writing, before trial").

[17] *See, e.g.*, *Schmitt v. Commonwealth*, 262 Va. 127, 145-46, 547 S.E.2d 186, 199 (2001) (holding that appellant "ha[d] waived on appeal his argument regarding the admissibility of [a self-incriminating] tape recording" because he had not complied with statutory objection requirements at trial); *Jones v. Commonwealth*, 230 Va. 14, 18 n.1, 334 S.E.2d 536, 539 n.1 (1985) (holding appellant's Fifth Amendment self-incrimination argument waived under Rule 5:25 because "he did not raise these points in the trial court, and we will not consider them here"); *see also* Code § 19.2-266.2(A)-(B) (providing that a defendant waives his right to challenge the admission of evidence allegedly obtained in violation of the Fifth Amendment if he does not file a "motion or objection in a proceeding in circuit court . . . in writing, before trial").

17

speedy trial rights under the Sixth Amendment,[18] and even of his right to a jury trial under the

Sixth Amendment.[19] None of these claims, even if conceded to be valid, renders the underlying

judgment void ab initio. Procedural default principles, including Rules 5:25 and 5A:18, still

apply, as do traditional finality principles protecting judgments no longer within the trial court's

active jurisdiction. *See supra* notes 16-19 and accompanying text.[20]

---

[18] *See, e.g.*, *Schmitt*, 262 Va. at 145-46, 547 S.E.2d at 199 (holding that appellant had waived his Sixth Amendment right to confrontation by not complying with statutory objection requirements at trial); *Butts v. Commonwealth*, 145 Va. 800, 806, 133 S.E. 764, 766 (1926) (observing that the right to speedy trial "is not self-operative" but must "be claimed, or it may be waived"); *see also* Code § 19.2-266.2(A)-(B) (providing that a defendant waives his right to challenge the admission of evidence obtained in violation of the Sixth Amendment if he does not file a "motion or objection in a proceeding in circuit court . . . in writing, before trial").

[19] *See, e.g.*, *Woodard v. Commonwealth*, 287 Va. 276, 278, 754 S.E.2d 309, 310 (2014) (noting the defendant's waiver of a jury trial in a felony proceeding); *Jackson v. Commonwealth*, 267 Va. 178, 189, 590 S.E.2d 520, 526 (2004) (acknowledging that the right to a jury trial may be waived in trial of a capital offense for which the death penalty may be imposed); *Fails v. Virginia State Bar*, 265 Va. 3, 8, 574 S.E.2d 530, 533 (2003) (observing that a criminal defendant "may waive, among other constitutional rights, the right to demand counsel or the right to demand trial by jury"); *accord Heinrich Schepers GmbH & Co. v. Whitaker*, 280 Va. 507, 516, 702 S.E.2d 573, 577 (2010) (affirming trial court's holding that appellant had waived its right to a jury for the liability but not damages phase of trial).

[20] We have recognized very few exceptions to the finality principle of Rule 1:1. As our cases demonstrate, "we apply it rigorously," *Commonwealth v. Morris*, 281 Va. 70, 77, 705 S.E.2d 503, 506 (2011), in both criminal and civil cases. We recognize only those exceptions to finality clearly embedded in our common-law inheritance, when a statute does not provide an exception to finality. *See, e.g.*, Code §§ 19.2-303 (permitting modification of an unserved portion of a criminal sentence "at any time before the sentence has been completely served"), 8.01-428 (recognizing power to modify or vacate final orders under specified circumstances, including fraud on the court, "at any time on [the court's] own initiative or upon the motion of any party"), 8.01-654(A)(2) (authorizing petitions for habeas corpus, as applicable, "within one year after the cause of action accrues" or "within two years from the date of final judgment in the trial court or within one year from either final disposition of the direct appeal in state court or the time for filing such appeal has expired"), 8.01-677 (authorizing writs of error coram vobis "after reasonable notice" for "any clerical error or error in fact for which a judgment may be reversed or corrected"). In *Morris*, for example, we noted that "[s]ome jurisdictions have held that audita querela is available as a remedy to modify a criminal sentence." 281 Va. at 83, 705 S.E.2d at 509. "However, neither this Court nor any English court prior to the writ's adoption in this Commonwealth has ever applied the writ of audita querela in this manner. We will not do so now." *Id.*

Jones contends that unlawful sentencing orders are different. He is right but not in the way he supposes. The jurisdictional power of a Virginia trial court to issue a criminal sentence depends upon the applicable sentencing statutes. *See Kelley*, 285 Va. at 76, 737 S.E.2d at 222 (acknowledging that "the Constitution of Virginia authorized the General Assembly to confer power upon the circuit courts" and that "[t]he General Assembly prescribed the applicable punishments for criminal offenses").[21]

There is no inherent judicial power to fix terms of imprisonment. *See Hernandez v. Commonwealth*, 281 Va. 222, 225, 707 S.E.2d 273, 275 (2011) (explaining that a Virginia trial court "has no inherent authority to depart from the range of punishment legislatively prescribed"). Thus, when a trial court imposes a sentence outside the range set by the legislature, the court's sentencing order — at least to that extent — is void ab initio because the court has no jurisdiction to do so. *See, e.g.*, *Rawls v. Commonwealth*, 278 Va. 213, 221, 683 S.E.2d 544, 549 (2009); *Royster v. Smith*, 195 Va. 228, 235, 77 S.E.2d 855, 858 (1953) (noting that a sentence is "void" only if "the court rendering it" did not have "the power to pronounce" it).

We clarified these points in *Rawls*. "Prior to *Rawls*, our jurisprudence had not been uniform in determining whether a defendant who received an improper sentence was entitled to a new sentencing hearing." *Grafmuller v. Commonwealth*, 290 Va. 525, 529, 778 S.E.2d 114, 116 (2015). "Thus, in *Rawls* we adopted a bright-line rule that: 'a sentence imposed in violation of a

---

[21] *See also* Code § 19.2-295(A) ("Within the limits prescribed by law, the term of confinement . . . and the amount of fine, if any, of a person convicted of a criminal offense, shall be ascertained by the jury, or by the court in cases tried without a jury."); *Smyth v. Holland*, 199 Va. 92, 98-99, 97 S.E.2d 745, 749-50 (1957) ("Provisions relating to the remission of fines and penalties, punishment and execution of sentences, the commencement of the confinement for crimes, credits and allowances to convicted persons, and probation and parole, are controlled and limited by our Constitution and statutes."); *Wilborn v. Saunders*, 170 Va. 153, 160-61, 195 S.E. 723, 726 (1938) (describing the legislative task of adopting "[p]enal laws" and the limited "judicial function" of "fix[ing] the amount of punishment within the limits prescribed by the legislature").

prescribed statutory range of punishment is void ab initio because the character of the judgment was not such as the Court had the power to render.'" *Id.* (quoting *Rawls*, 278 Va. at 221, 683 S.E.2d at 549). In this context, a sentencing order is void ab initio only if the trial court lacked "the power to render" it. *Id.*; *accord Burrell*, 283 Va. at 480, 722 S.E.2d at 275 (recognizing an order as void ab initio when the trial court had no "power to render" it).[22]

We respectfully disagree with the dissent's assertion that Virginia law supports Jones's use of a motion to vacate in this context. *See post* at 44-46. The dissent offers only one authority in support of that assertion: *Loving v. Commonwealth*, 206 Va. 924, 925, 147 S.E.2d 78, 79 (1966). That decision, however, was famously reversed by *Loving v. Virginia*, 388 U.S. 1 (1967), and neither our opinion nor the United States Supreme Court opinion reversing it had a single line addressing the proper role of motions to vacate under Virginia law. Furthermore, the issue was not briefed, argued, or decided.

Under Virginia law, stare decisis does not "foreclose inquiry" into an issue not previously "raised, discussed, or decided." *Chesapeake Hosp. Auth. v. Commonwealth*, 262 Va. 551, 560, 554 S.E.2d 55, 59 (2001); *see also Selected Risks Ins. v. Dean*, 233 Va. 260, 265, 355 S.E.2d 579, 581 (1987) (recognizing that precedent accorded stare decisis weight is contingent upon "full deliberation upon the issue by the court"); *Moses v. Commonwealth*, 45 Va. App. 357,

---

[22] *See, e.g.*, *Frango v. Commonwealth*, 66 Va. App. 34, 48-49, 782 S.E.2d 175, 181-82 (2016) (holding that the trial court's sentence of two years of incarceration was void ab initio because, per sentencing statutes, the maximum sentence was 12 months, and thus, the trial court lacked "power to render" the excessive sentence (quoting *Rawls*, 278 Va. at 221, 683 S.E.2d at 549)); *Gordon v. Commonwealth*, 61 Va. App. 682, 685-86, 739 S.E.2d 276, 278 (2013) (reversing appellant's conviction on the basis that it was void ab initio as to the portion of the sentence that exceeded applicable sentencing statutes and thus went beyond the trial court's power); *Zedan v. Westheim*, 60 Va. App. 556, 577, 729 S.E.2d 785, 795 (2012) (analyzing whether the disputed trial court ruling was void versus voidable based on whether "the character of the order was such that the court had no power to render it" (quoting *Singh v. Mooney*, 261 Va. 48, 51-52, 541 S.E.2d 549, 551 (2001))).

20

364 n.4, 611 S.E.2d 607, 610 n.4 (2005) (en banc).  For stare decisis to apply, "the court must have decided the issue for which the precedent is claimed; it cannot merely have discussed it in dictum, ignored it, or assumed the point without ruling on it."  Bryan A. Garner, et al., The Law of Judicial Precedent 6 (2016).

We made this very point about motions to vacate in *Hirschkop v. Commonwealth*, 209 Va. 678, 166 S.E.2d 322 (1969).  Claiming *Loving* as supportive precedent, the criminal defendant in *Hirschkop* filed a motion to vacate his final conviction and sentencing order.  209 Va. at 324, 166 S.E.2d at 681-82.  We found several reasons why the motion to vacate was improper.  One was that our *Loving* decision had no precedential value on the motion-to-vacate issue because "it does not appear from the opinion in *Loving* that the question of jurisdiction was raised or that any motion to dismiss was made by the Commonwealth.  Certainly *Loving* does not stand for the proposition that any judgment which has become final can be vacated."  *Id.* at 681-82, 166 S.E.2d at 324.  We continue to hold this view.[23]

2.

Jones claims that *Montgomery*'s retroactivity holding requires, as a matter of federal law, that we treat a *Miller* violation as rendering the sentence void ab initio.  After all, Jones points out, *Montgomery* uses the term "void" in various places in the opinion to describe unconstitutional convictions and sentences.  What Jones misses, however, is that neither *Montgomery* nor any decision upon which it relies holds that such violations render a criminal conviction or sentence void *ab initio*.  Jones's argument fails to appreciate the crucial nature of this distinction.

---

[23] We find unpersuasive the dissent's reliance on *Hodges v. Commonwealth*, 213 Va. 316, 191 S.E.2d 794 (1972).  *See post* at 42 n.9, 47.  We decided *Hodges* on direct appeal and said nothing about the availability of a collateral attack.

21

"When a new substantive rule of constitutional law is established," the Supreme Court explained, "this Court is careful to limit the scope of any attendant procedural requirement to avoid intruding more than necessary upon the States' sovereign administration of their criminal justice systems." *Montgomery*, 577 U.S. at ___, 1336 S. Ct. at 735. By using the term "void," *Montgomery* merely said what has been said for over a century. Certain types of constitutional errors render convictions "void," i.e., voidable until declared void, and thus subject to collateral attack in federal *habeas* proceedings — a precedential anchor securely set in *Ex parte Siebold*, 100 U.S. 371, 376-77 (1880).

This voidness principle was introduced by *Ex parte Siebold* "[i]n support of its holding that a conviction obtained under an unconstitutional law warrants *habeas relief*." *Montgomery*, 577 U.S. at ___, 136 S. Ct. at 731 (emphasis added) (quoting *Ex parte Siebold*, 100 U.S. at 376-77).[24] This conclusion, *Montgomery* held, also applies to state habeas review, but only to the extent that the state collateral-review proceeding "is open to a claim controlled by federal law"[25]

---

[24] *Ex parte Siebold* cannot be read to say that mere voidable errors can never be addressed by a habeas court and that a habeas court can only address void-ab-initio errors. If that were true, of course, there would be no reason for the habeas remedy. The all-purpose motion to vacate would render habeas irrelevant. But it has not been true for many decades. "Originally, criminal defendants whose convictions were final were entitled to federal habeas relief only if the court that rendered the judgment under which they were in custody lacked jurisdiction to do so." *Danforth v. Minnesota*, 552 U.S. 264, 271 (2008) (citing *Ex Parte Siebold*). However, the Supreme Court "openly discarded the concept of jurisdiction — by then more [of] a fiction than anything else — as a touchstone of the availability of federal habeas review, and acknowledged that such review is available for claims of disregard of the constitutional rights of the accused." *Id.* at 272 n.7 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 79 (1977)) (citing *Waley v. Johnston*, 316 U.S. 101, 104-05 (1942)). Habeas corpus is "not restricted to those cases where the judgment of conviction is void for want of jurisdiction of the trial court to render it." *Waley*, 316 U.S. at 104-05.

[25] *See* 28 U.S.C. § 2254(b)(1) (requiring generally the exhaustion of state remedies before initiating habeas action in federal court except when "there is an absence of available State corrective process"); *Pennsylvania v. Finley*, 481 U.S. 551, 556-57 (1987) ("Postconviction relief is even further removed from the criminal trial than is discretionary direct review. It is not part of the criminal proceeding itself, and it is in fact considered to be civil in nature. It is a

and the "claim is properly presented in the case." *Id.* at ___, 136 S. Ct. at 731-32. Those last two caveats are important.

The law of habeas corpus in this Commonwealth "is open to a claim controlled by federal law." *Id.* at ___, 136 S. Ct. at 731; *see, e.g.*, *Griffin v. Cunningham*, 205 Va. 349, 355, 136 S.E.2d 840, 845 (1964) (noting that "[i]t is well settled that the deprivation of a constitutional right of a prisoner may be raised by habeas corpus"); *Lacey v. Palmer*, 93 Va. 159, 172, 24 S.E. 930, 934 (1896) (evaluating statute under which habeas petitioner was convicted for validity under Commerce Clause of United States Constitution). We routinely adjudicate federal constitutional claims that are "properly presented," *Montgomery*, 577 U.S. at ___, 136 S. Ct. at 732, in our habeas proceedings.

The case before us now, however, is not a habeas corpus proceeding. Jones filed a motion to vacate in the sentencing court 12 years after his conviction, claiming that his sentence was cruel and unusual under the Eighth Amendment. There is no precedent under Virginia law for asserting such a claim in a motion to vacate. To be sure, we have never held, nor are we aware of any court that has held, that a motion to vacate (rather than a petition for habeas corpus) is a proper vehicle under Virginia law to challenge a conviction or sentence based solely on a federal constitutional challenge.

If a motion to vacate had the reach that Jones asserts, the multitude of substantive and procedural requirements in our habeas corpus law would be permanently sidelined. *See* Costello,

---

collateral attack that normally occurs only after the defendant has failed to secure relief through direct review of his conviction. *States have no obligation to provide this avenue of relief*, and when they do, the fundamental fairness mandated by the Due Process Clause does not require that the State supply a lawyer as well." (emphasis added) (citations omitted)); *see also McKane v. Durston*, 153 U.S. 684, 687 (1894) ("A review by an appellate court of the final judgment in a criminal case, however grave the offence of which the accused is convicted, was not at common law and is not now a necessary element of due process of law. It is wholly within the discretion of the State to allow or not to allow such a review. A citation of authorities upon the point is unnecessary.").

*supra* note 11, § 68.2[2], at 1244 (describing Virginia habeas provisions as "impos[ing] strict limitations on the time within which petitions . . . may be filed" and highlighting other procedural requirements). Statutes of limitation, as well as rules governing successive petitions, jurisdiction of courts to hear such claims, procedural defaults, service of process — none of these requirements would be relevant if a motion to vacate could be used in place of a petition for habeas corpus.

Virginia law does not permit a motion to vacate that is filed in a trial court long after the court lost active jurisdiction over the criminal case to serve as an all-purpose pleading for collateral review of criminal convictions. Just as habeas corpus cannot be used as a substitute for a direct appeal, 5 Ronald J. Bacigal, Virginia Practice Series: Criminal Procedure § 21:8, at 669 (2015-2016 ed.), a motion to vacate cannot be used as a substitute for a habeas corpus petition. Except for the narrow band of situations in which we have recognized the efficacy of motions to vacate to remedy orders that are void ab initio, constitutional challenges like the one Jones asserts must be properly presented in a timely petition for habeas corpus.

To put the point in the framework of *Montgomery*, a motion to vacate filed in a trial court that has long since lost active jurisdiction over the case, *see* Rule 1:1; Costello, *supra* note 11, § 62.12, at 1087, is not a state collateral-review proceeding "open to a claim controlled by federal law" and does not involve a claim that is "properly presented" by a motion to vacate, *Montgomery*, 577 U.S. at ___, 136 S. Ct. at 731-32. Thus, even if the trial court (retroactively) violated *Miller* by imposing the stipulated life-without-parole sentence on Jones, the sentencing order would not be void ab initio and, thus, subject to annulment by a motion to vacate filed many years after the trial court lost active jurisdiction over the criminal case. Instead, the putative *Miller* violation, if proven, would render the sentence merely voidable — that is,

24

vulnerable to being judicially declared void — upon review either via direct appeal timely made or in a habeas corpus proceeding.

To be sure, *Montgomery* itself implicitly refutes Jones's assumption that a sentencing order in violation of *Miller* must be deemed void ab initio. *Montgomery* held that "[a] State may remedy a *Miller* violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them." *Montgomery*, 577 U. S. at ___, 136 S. Ct. at 736. How could that remedy be appropriate for a sentencing order deemed void ab initio, given that it is a "complete nullity" which, in the eyes of the law, does not exist at all? *Grafmuller*, 290 Va. at 528 n.1, 778 S.E.2d at 115 n.1 (citation omitted); *see also Griffith v. Frazier*, 12 U.S. 9, 28 (1814) (noting that an appointment that is "void ab initio" is "absolutely void" and thus renders all subsequent acts of the appointee voidable). A nonexistent nullity cannot be resurrected by some future, uncertain event. In this respect, the *Montgomery* remedy is irreconcilable with the dissent's claim that a violation of *Miller* ipso facto renders the sentence void ab initio.

While the dissent correctly points out that nowhere does *Montgomery* specifically state that habeas relief is the sole remedy available to address an unconstitutional sentence, that point is directed to the wrong question. The proper mode of collaterally attacking a criminal conviction and sentence in a state court depends on state law not federal law. *See Danforth v. Minnesota*, 552 U.S. 264, 288 (2008) ("[T]he remedy a state court chooses to provide its citizens for violations of the Federal Constitution is primarily a question of state law." (citation omitted)); *Pace v. DiGuglielmo*, 544 U.S. 408, 414 (2005) (affirming procedural timelines for postconviction relief under state law and holding that "[w]hen a postconviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of [federal habeas review]" (citation omitted)); *O'Sullivan v. Boerckel*, 526 U.S. 838, 847-48 (1999) (noting that

25

"there is nothing in the exhaustion doctrine requiring federal courts to ignore a state law or rule providing that a given procedure is not available"). We thus would not expect *Montgomery* to say anything about the exclusivity of state habeas relief in Virginia courts.

What *Montgomery* did say was that a life-without-parole sentence invalidated by *Miller* must be corrected in any state collateral-review proceeding that "is open to a claim controlled by federal law," assuming that the "claim is properly presented in the case." *Montgomery*, 577 U.S. at ___, 136 S. Ct. at 731-32. In Virginia, a *Miller* violation can be addressed on direct review or in a habeas proceeding. Because the violation, if proven, does not render the sentence void ab initio but merely voidable, it cannot be addressed by a motion to vacate filed years after the sentence became final. *See* Costello, *supra* note 11, § 62.12, at 1087 (noting that "a voidable judgment may be attacked only while the trial court that rendered it still has jurisdiction").

The dissent appears to believe that every substantive constitutional rule held to be retroactive, when violated, renders the conviction or sentence void ab initio. *See post* at 41 (referring to this as the "general approach"). However, only one case cited by the dissent uses the "void ab initio" expression, *United States v. Johnson*, 457 U.S. 537, 550 (1982), and that case, like *Siebold*, addressed only a federal court's retroactive use of a new substantive rule in the context of federal habeas law.

Even in that context, *Johnson* synthesized earlier precedent that applied the "notion" of "void ab initio" judgments (an after-the-fact characterization, given that none of those cases used that term) only to situations in which a federal habeas court applies a constitutional guarantee that either "immunizes a defendant's conduct from punishment" or prevents a "trial from taking place at all." *Id.* at 550-51 (citing cases barring punishment of a defendant invoking the Fifth Amendment and cases barring prosecutions violative of the Double Jeopardy Clause); *see also*

26

*Mackey v. United States*, 401 U.S. 667, 692-93 & nn.7-8 (1971) (Harlan, J., concurring) (observing that habeas review historically applied only to cases in which the challenged conviction involved "conduct beyond the power of the criminal law-making authority to proscribe" in a way that "punish[ed] for conduct that is constitutionally protected").

Nothing in the void-ab-initio "notion" in *Johnson* sought to dictate how state law governs the scope and availability of collateral remedies or to mandate that violations of retroactive substantive rules be treated as defects in subject-matter jurisdiction for purposes of motions to vacate filed in state courts. The "general approach" referred to by the dissent, *post* at 41, is nothing more than the unremarkable fact that habeas courts applying substantive rules retroactively have authority to declare violative convictions or sentences to be void and to order appropriate relief. None of these cases hold that state courts must permit such challenges to go forward outside the parameters of a properly filed habeas petition.

### D.

Finally, our colleagues in dissent raise several points about the interplay between *Miller* and *Montgomery* that go considerably beyond Jones's position in this appeal. We respect these views and offer a brief explanation as to why we cannot agree with them.

### 1.

First, the dissent adopts an "expanded" analysis of *Montgomery*, *post* at 33, contending that *Montgomery* "require[s] a *Miller* hearing before a juvenile offender can be sentenced to life without parole, *regardless of whether the sentence is mandatory or discretionary*," *post* at 36 (emphasis added). This fulsome expansion, however, does not come from *Montgomery*'s expansive interpretation of *Miller*. It comes from the dissent's expansive interpretation of *Montgomery*. As the dissent candidly acknowledges: "Even if *Miller* and *Montgomery* did not

27

expressly require the facts surrounding Jones's sentencing be reconsidered, I would hold that juveniles in Virginia facing a sentence of life without parole should be afforded a *Miller* hearing, for the reasons stated in *Montgomery*."  *Post* at 47 n.11.

We view the debate through a different prism.  "We are duty bound," of course, "to enforce the Eighth Amendment consistent with the holdings of the highest court in the land."  *Vasquez v. Commonwealth*, 291 Va. 232, 242, 781 S.E.2d 920, 926 (2016).  However, our "duty to follow binding precedent is fixed upon case-specific holdings, not general expressions in an opinion that exceed the scope of a specific holding."  *Id.*  We believe "the very concept of binding precedent presupposes that courts are 'bound by holdings, not language.'"  *Id.* at 242-43, 781 S.E.2d at 926 (quoting *Alexander v. Sandoval*, 532 U.S. 275, 282 (2001)).  This limiting principle exists because "words [in judicial] opinions are to be read in the light of the facts of the case under discussion."  *Armour & Co. v. Wantock*, 323 U.S. 126, 133 (1944); *see also Ameur v. Gates*, 759 F.3d 317, 324 (4th Cir. 2014).

As we recently stated, *Miller* "held that 'mandatory life-without-parole sentences for juveniles violate the Eighth Amendment."  *Vasquez*, 291 Va. at 240-41, 781 S.E.2d at 925 (quoting *Miller*, 567 U.S. at ___, 132 S. Ct. at 2464).  The main "question" for decision in *Montgomery* was equally clear:  "whether *Miller*'s prohibition on mandatory life without parole for juvenile offenders" should be applied retroactively.  *Montgomery*, 577 U.S. at ___, 136 S. Ct. at 732.  Both cases addressed *mandatory* life sentences without possibility of parole.  The dissent's proposed expansion of these holdings to *non-mandatory* life sentences — based entirely on dicta in *Montgomery* — requires attenuated reasoning uninfluenced by stare decisis.[26]

---

[26] In his *Montgomery* dissent, Justice Scalia asserted that the majority opinion employed dicta not for the purpose of "applying *Miller*, but rewriting it."  *Montgomery*, 577 U.S. at ___, 136 S. Ct. at 743 (Scalia, J., dissenting).  Our colleagues in dissent apparently endorse this view.

We acknowledge that, perhaps, some post-*Montgomery* opinion from the United States Supreme Court might expand the Eighth Amendment to "mandatory or discretionary" juvenile life sentences generally, as the dissent proposes, with the evident purpose of moving the bar so high that all life sentences for convicted juvenile murderers and rapists, or juveniles convicted of other similarly serious crimes, eventually will be judicially deemed cruel and unusual punishment as a matter of law. The question before us, however, "is what the law is now, not what it may be in the future. We are not in the speculative business of plotting the future course of federal precedents." *Clark v. Virginia Dep't of State Police*, 292 Va. ___, ___, 793 S.E.2d 1, 7 (2016); *cf. Garcia v. Texas*, 564 U.S. 940, 941 (2011) ("Our task is to rule on what the law is, not what it might eventually be.").

2.

Second, the dissent sees our analysis as a logical conundrum. *Miller* cannot be understood, the dissent suggests, to apply only to a mandatory sentence of life without possibility of parole. This "interpretation of *Miller* and *Montgomery*," the dissent states, "renders the requirement that a sentencing court hold a hearing and 'consider a juvenile offender's youth and attendant characteristics' contingent upon whether the sentence to be imposed is mandatory rather than discretionary." *Post* at 35. Continuing this syllogism, the dissent adds, "[b]y that same logic, the majority concludes that a sentencing court may, but is not constitutionally required to, consider those factors if the sentence is discretionary." *Post* at 35-36.

We do not endorse this logic or attempt to defend it. Our understanding of *Miller* is different — and far clearer — than the thesis criticized by the dissent. Under our view, the

*Post* at 33 n.2 (noting that the "resultant expansion of *Miller* did not go unnoticed by the dissenters" in *Montgomery*). On this point, we concur with Justice Ginsburg, who aptly observed that "Cassandra-like predictions in dissent are not a sure guide to the breadth of the majority's ruling." *Lee v. Kemna*, 534 U.S. 362, 386 (2002) (citation omitted). That observation is particularly poignant when the predictions are based upon nonbinding dicta.

whole point of *Miller* was to preclude a sentencing scheme from imposing a mandatory life-without-parole sentence because doing so would eliminate the sentencing court's discretion to impose anything less than that. Only in those nondiscretionary sentencing schemes are the offender's "youth and attendant characteristics," *Montgomery*, 577 U.S. at ___, 136 S. Ct. at 734, truly irrelevant.

The *Miller* remedy was to require mandatory life sentences to be accompanied by the possibility of release on parole at some future date. *See Miller*, 567 U.S. at ___, ___, 132 S. Ct. at 2469, 2474-75. If that possibility exists, the *Miller* decision held, there could be no Eighth Amendment violation. *Montgomery* added another remedy in cases in which no parole possibility exists: an opportunity upon resentencing to conduct an evidentiary hearing on the offender's youth and attendant characteristics. *See Montgomery*, 577 U.S. at ___, 136 S. Ct. at 736-37.

Those are the only two scenarios: (i) mandatory life-without-parole sentences that can be remedied by the availability of parole and (ii) those for which parole is unavailable and which therefore require remand for discretionary resentencing. Both the *Miller* and *Montgomery* remedies presuppose that the original life sentence was mandatory such that no mitigating evidence presented at the original sentencing hearing could have precluded the entry of a mandatory sentencing order "condemning him or her to die in prison." *Id.* at ___, 136 S. Ct. at 726 (summarizing *Miller*). Without this predicate, neither remedy makes sense.

Our dissenting colleagues think that we leave out a third scenario, one in which a purely discretionary sentencing scheme does not require consideration of a juvenile offender's youth and attendant characteristics. Under our approach, the dissent warns, a sentencing court could choose to ignore these factors if the sentence is discretionary.

30

We respond by pointing out the unrealistic nature of that scenario. We are aware of no statute in the nation that authorizes a sentencing court to use its discretion to impose a life-without-parole punishment on a juvenile but forbids the court from considering the juvenile's "youth and attendant characteristics." *Id.* at ___, 136 S. Ct. at 734. Nor are we aware of any case — and this is certainly not one — in which a sentencing statute gave the juvenile offender the opportunity to present mitigating evidence but the sentencing court arbitrarily refused to consider it. If there were such a case, we would not need the Eighth Amendment to remedy the obvious error. We would simply hold that the trial court cannot arbitrarily refuse to consider relevant evidence that a statute requires the court to consider. *See supra* notes 11-12 and accompanying text.

If *Montgomery* actually held what the dissent supposes, *Montgomery* would, ironically, not amplify *Miller* but reverse it. A mere future, potential opportunity to present mitigating evidence at a parole hearing (the remedy authorized by *Miller*) would never be enough to satisfy the Eighth Amendment under the dissent's view of *Montgomery*. That is because, under the dissent's "expanded" analysis of *Montgomery*, *post* at 33, only the consideration of mitigation evidence at the time of sentencing or resentencing would suffice — rendering the dissent's reasoning in conflict with basic voidness doctrine. A judicial order that is void ab initio, in the eyes of the law, never existed. It might be possible to resurrect a legally dead ruling (one later declared void) but not one that never existed in the first place (one void ab initio). So, too, if a sentencing order were truly void ab initio, it could not be cured by the hope that, sometime in the distant future, a parole board may release the prisoner from the void-ab-initio sentence.

31

III.

Having reconsidered *Jones I* in light of *Montgomery*, we reinstate our holding in *Jones I*, subject to the qualifications made herein, and affirm the trial court's denial of Jones's motion to vacate.[27]

*Affirmed.*


JUSTICE POWELL, with whom JUSTICE GOODWYN and JUSTICE MIMS join, dissenting.

When this Court first analyzed Jones's claim, we held as the majority states: that Jones's sentence was not a mandatory life sentence. *Jones v. Commonwealth* (*Jones I*), 288 Va. 475, 481, 763 S.E.2d 823, 826 (2014). I continue to agree with this part of the holding. However, in light of the Supreme Court's recent decision in *Montgomery v. Louisiana*, 577 U.S. ___, 136 S. Ct. 718 (2016), I can no longer agree with that portion of *Jones I* where we held that, because Jones's sentence was not a mandatory life sentence, the holding of *Miller v. Alabama*, 567 U.S. ___, 132 S. Ct. 2455 (2012), does not apply.

---

[27] Our rulings substantially track the successful reasoning of the original appellate brief filed by the Attorney General as it related to the issues addressed in *Jones I*. After the *Montgomery* remand, however, the Attorney General has taken a different view and now suggests that we should remand the case to the trial court for an additional evidentiary hearing to consider youth-based mitigation evidence — evidence Jones failed to present at his original sentencing hearing due to the stipulated sentence in his plea agreement. The Attorney General interprets *Montgomery* to require this result. Every aspect of the Attorney General's change of position, however, involves purely legal issues on which we must give our de novo judgment. *See generally Gibson v. United States*, 329 U.S. 338, 344 n.9 (1946) ("A confession of error . . . does not relieve this Court of the performance of the judicial function" because "our judicial obligations compel us to examine independently the errors confessed." (citation omitted)); *Young v. United States*, 315 U.S. 257, 259 (1942) ("[O]ur judgments are precedents, and the proper administration of the criminal law cannot be left merely to the stipulation of parties."); *CVAS 2, LLC v. City of Fredericksburg*, 289 Va. 100, 117 n.5, 766 S.E.2d 912, 919 n.5 (2015) ("[A] party cannot concede the law.").

32

In *Montgomery*, the Supreme Court purposefully clarified and, in my opinion, expanded the holding in *Miller*, thereby revealing why this Court's previous interpretation of *Miller* in *Jones I* was misguided. The Supreme Court's analysis in *Montgomery* transparently explains why *Miller* is not limited to juvenile offenders facing or serving mandatory life sentences without parole. *Montgomery* explicitly requires that a *Miller* hearing be held before a life sentence without parole may be imposed upon a juvenile offender in order to comply with the strictures of the Eighth Amendment. In the absence of such a hearing, the sentence is in violation of the juvenile's substantive constitutional rights and a court is without jurisdiction to impose a life sentence without parole on a juvenile offender. Therefore, such a sentence is void ab initio. Accordingly, I must respectfully dissent.[1]

## I. Mandatory Life Sentences

It is important to first address the basis of my opinion that, contrary to the majority opinion, *Miller* is not limited to mandatory life sentences. As *Montgomery* makes explicitly clear, *Miller* "rendered life without parole *an unconstitutional penalty* for 'a class of defendants because of their status'—that is, juvenile offenders whose crimes reflect the transient immaturity of youth." 577 U.S. at ___, 136 S. Ct. at 734 (quoting *Miller*, 567 U.S. at ___, 132 S. Ct. at 2469) (emphasis added). *See also id.* ("*Miller* . . . bar[red] life without parole . . . for all but the rarest of juvenile offenders, those whose crimes reflect permanent incorrigibility.").[2] Thus, *Montgomery* made it clear that the focus of *Miller* was not that only mandatory life sentences are

---

[1] With regard to the collateral review of Jones's other sentences, I agree with the majority that Rule 5:25 bars our consideration of those sentences.

[2] Although the majority in this Court fails to recognize the significance of *Montgomery*, its resultant expansion of *Miller* did not go unnoticed by the dissenters in the Supreme Court. As Justice Scalia colloquially put it, "[i]t is plain as day that the majority is not applying *Miller*, but rewriting it." *Montgomery*, 577 U.S. at ___, 136 S. Ct. at 743 (Scalia J. dissenting).

33

unconstitutional; rather, it is that the Eighth Amendment requires individualized consideration before a juvenile can be sentenced to life in prison without the possibility of parole.

To ensure such individualized consideration, the Supreme Court expressly mandated that a sentencing court is required to "take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison" before imposing a life sentence upon a juvenile. *Miller*, 567 U.S. at ___, 132 S. Ct. at 2469. As the Supreme Court explained in *Montgomery*, such a hearing is vitally important, as the hearing "gives effect to *Miller*'s substantive holding that life without parole is an excessive sentence for children whose crimes reflect transient immaturity." 577 U.S. ___, 136 S. Ct. at 735. This is because "[a] hearing where 'youth and its attendant characteristics' are considered as sentencing factors is necessary to separate those juveniles who may be sentenced to life without parole from those who may not." *Id.* (quoting *Miller*, 567 U.S. at ___, 132 S. Ct. at 2460).

Thus, when viewed through the lens of *Montgomery*, it is clear that *Miller*'s discussion of mandatory life sentences was not meant to limit application of the opinion to that instance, but rather to demonstrate how mandatory sentencing schemes foreclose the necessary individualized consideration.

> Mandatory life without parole for a juvenile precludes consideration of his chronological age and its hallmark features-- among them, immaturity, impetuosity, and failure to appreciate risks and consequences. It prevents taking into account the family and home environment that surrounds him--and from which he cannot usually extricate himself--no matter how brutal or dysfunctional. It neglects the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him. Indeed, it ignores that he might have been charged and convicted of a lesser offense if not for incompetencies associated with youth- -for example, his inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys. And finally, this mandatory punishment

34

disregards the possibility of rehabilitation even when the
circumstances most suggest it.

*Miller*, 567 U.S. at ___, 132 S. Ct. at 2468 (citations omitted).

The majority, however, contends that *Montgomery*'s express language barring life without parole for all but the rarest of juvenile offenders is not binding upon it because the question before the Court in *Montgomery* was limited to "'whether *Miller*'s prohibition on mandatory life without parole for juvenile offenders' should be applied retroactively." (Quoting *Montgomery*, 577 U.S. at ___, 136 S. Ct. at 732.) Thus, the majority insists that the precedential holding in *Montgomery* amounts simply to: *Miller* is retroactive.

By truncating its analysis, the majority ignores the rationale underlying the Supreme Court's decision. As the Supreme Court explains, the reason *Miller* is retroactive is because it announced a substantive rule of constitutional law that "rendered life without parole an unconstitutional penalty for 'a class of defendants because of their status'—that is, juvenile offenders whose crimes reflect the transient immaturity of youth." *Montgomery*, 577 U.S. at ___, 136 S. Ct. at 734 (quoting *Miller*, 567 U.S., at ___, 132 S. Ct. at 2469).

Further, the majority's interpretation of *Miller* and *Montgomery* renders the requirement that a sentencing court hold a hearing and "consider a juvenile offender's youth and attendant characteristics before determining that life without parole is a proportionate sentence" contingent upon whether the sentence to be imposed is mandatory rather than discretionary. Under the majority's interpretation, the factors that serve as the very basis of the substantive holding of *Miller* are only constitutionally required to be considered when a sentence is mandatory. By that same logic, the majority concludes that a sentencing court may, but is not constitutionally

35

required to, consider those factors if the sentence is discretionary.[3]  I find it highly unlikely that the Supreme Court would tolerate any life sentence without parole to be imposed upon a juvenile without consideration of the relevant factors, especially considering that "the penological justifications for life without parole collapse in light of 'the distinctive attributes of youth.'" *Montgomery*, 577 U.S. at ___, 136 S. Ct. at 734 (quoting *Miller*, 567 U.S. at ___, 132 S. Ct. at 2465).[4]  Yet the majority concludes that this substantive constitutional right does not extend to juveniles facing discretionary life sentences without the possibility of parole.  The more logical approach, and the approach I believe is required by *Montgomery*, would be to require a *Miller* hearing before a juvenile offender can be sentenced to life without parole, regardless of whether the sentence is mandatory or discretionary, thus affording the same constitutional protections to all juvenile offenders.[5]

---

[3] That is not to say that a sentencing court would be forbidden from considering these factors or that it could arbitrarily ignore them if presented with mitigating evidence related to these factors.  Rather, I am simply pointing out that, under the majority's view, a court imposing a discretionary life sentence without parole would not be required to hold a hearing and specifically consider all of the same factors to the same degree as a court imposing a mandatory life sentence without parole because *Miller* does not apply.

[4] As further support for the proposition that the hearing requirement of *Miller* applies to all situations where a juvenile homicide offender is facing a sentence of life without parole, the Court need look no further than the Supreme Court's recent summary opinion in *Arias v. Arizona*, ___ U.S. ___, 137 S. Ct. 370 (2016).  In *Arias*, the defendant sought review of his life sentence without parole under *Miller*.  *State v. Arias*, 2015 Ariz. App. Unpub. LEXIS 658 (Ariz. Ct. App. 2015).  The Court of Appeals of Arizona denied relief on the sole basis that *Miller* did not apply because the defendant's life sentence was not mandatory.  *Id.* at *3.  Given that the Supreme Court summarily vacated and remanded the judgment in *Arias*, the only logical interpretation for this action is that a majority of the Supreme Court interprets *Montgomery* as expanding *Miller* to apply to all cases where a juvenile is sentenced to life without parole, not just those cases where the sentence is mandatory.

[5] For those juvenile offenders who were already sentenced to life without parole and did not receive the benefit of a *Miller* hearing, I agree with the majority's characterization that this would require a resentencing either to impose a sentence where parole is available or to provide for a *Miller* hearing.

II. *Miller* Hearing

Next, the majority takes the position that *Miller* and *Montgomery* require only that a defendant have the opportunity to offer mitigation evidence of his youth and attendant circumstances. Notably, the majority reaches this conclusion by relying on language taken from the recitation of the facts in *Montgomery*.[6] On the other hand, the language used throughout the remainder of the opinion makes it clear that the Supreme Court interpreted *Miller* as requiring more than just the opportunity to present mitigation evidence. "*Miller requires* that before sentencing a juvenile to life without parole, the sentencing judge take into account 'how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison.'" *Montgomery*, 577 U.S. ___, 136 S. Ct. at 733 (quoting *Miller*, 567 U.S. ___, 132 S. Ct. at 2475) (emphasis added). Therefore, "[a] hearing where 'youth and its attendant characteristics' are considered as sentencing factors *is necessary* to separate those juveniles who may be sentenced to life without parole from those who may not." *Id.* at 735 (quoting *Miller*, 567 U.S. ___, 132 S. Ct. at 2460) (emphasis added). Disappointingly, the majority pays no heed to the Supreme Court's clear statement regarding the need for such a hearing.

If, as the majority states, a *Miller* violation only occurs when a juvenile offender is denied the opportunity to present mitigation evidence, then the entire purpose of a *Miller* hearing is undermined. The majority's analysis ignores the Supreme Court's admonition that "*Miller* requires *a sentencer* to consider a juvenile offender's youth and attendant characteristics before determining that life without parole is a proportionate sentence" regardless of whether the

---

[6] Specifically, the majority relies upon language describing the fact that Montgomery's "sentence was automatic upon the jury's verdict, so Montgomery had *no opportunity to present mitigation evidence to justify a less severe sentence*." *Montgomery*, 577 U.S. ___, 136 S. Ct. at 725 (emphasis added). Such language is clearly not part of the Supreme Court's holding in *Montgomery*.

defense presents any mitigating evidence. *Id.* at ___, 136 S. Ct. at 734 (emphasis added). The majority's emphasis on the opportunity to present evidence, rather than on the need for the trial court's individualized consideration of such factors, is misplaced. Even if a juvenile offender foregoes the opportunity to present mitigating evidence, a court does not have the option of sentencing that juvenile to life without the possibility of parole absent consideration of the juvenile's youth and attendant circumstances.

The majority's approach places the burden on the juvenile offender to prove that he or she was not the rare exception to the rule. Notably, however, nothing in *Miller* requires a juvenile offender to present any evidence. As previously noted, because *Montgomery* interprets *Miller* as barring life without parole as a punishment for the vast majority of juvenile offenders, any burden of proof would seem to rest on the prosecution to prove that the juvenile offender was the rare exception to the rule.

### III. Waiver

The majority further claims that, by entering into a plea agreement and stipulating to a life sentence, Jones waived the requirement that a *Miller* hearing be conducted. The majority goes on to make the broad assertion that *all* constitutional challenges are governed by waiver principles. Although I fully agree with the majority that many constitutional challenges may be waived, I cannot agree with the notion that a plea agreement can act as a waiver to all constitutional challenges. *See, e.g.*, *Hill v. Lockhart*, 474 U.S. 52, 58 (1985) (holding that "the two-part *Strickland v. Washington* test applies to challenges to *guilty pleas* based on ineffective assistance of counsel.") (emphasis added). Moreover, the majority fails to offer any controlling authority that supports its underlying proposition that a defendant can waive all constitutional

38

challenges; it does not cite to any case indicating that a defendant can waive a challenge based on a continuing violation of a substantive rule of constitutional law.[7]

Nor could it. The very nature of a substantive rule of constitutional law precludes such waiver. Such a violation occurs where "the conduct being penalized is constitutionally immune from punishment." *United States v. United States Coin & Currency*, 401 U.S. 715, 724 (1971). *See also Penry v. Lynaugh*, 492 U.S. 302, 330 (1989) (applying the same logic to punishments that "the Constitution itself deprives the State of the power to impose"). Such a violation "affects the foundation of the whole proceedings." *Ex parte Siebold*, 100 U.S. 371, 376 (1880). Therefore, "[a] conviction or sentence imposed in violation of a substantive rule is not just erroneous but contrary to law and, as a result, void." *Montgomery*, 577 U.S. at ___, 136 S. Ct. at 731.

> "An unconstitutional law is void, and is as no law." A penalty imposed pursuant to an unconstitutional law is no less void because the prisoner's sentence became final before the law was held unconstitutional. There is no grandfather clause that permits States to enforce punishments the Constitution forbids. To conclude otherwise would undercut the Constitution's substantive guarantees.

*Id.* (quoting *Siebold*, 100 U.S. at 376).

Additionally, the notion that such a requirement can be waived violates our long standing principle that parties cannot confer power upon the court which it does not rightfully possess. *Cf. Morrison v. Bestler*, 239 Va. 166, 169-70, 387 S.E.2d 753, 755 (1990) ("Subject matter

---

[7] Instead of offering any controlling precedent indicating that a defendant can waive a substantive rule of constitutional law, the majority relies on language taken from the concurrence to the summary opinion issued by the Supreme Court. *See Jones v. Virginia*, ___ U.S. ___, ___, 136 S. Ct. 1358, 1358 (2016) (Thomas, J., concurring). Based on this language, the majority asserts that "[w]e are thus free to employ traditional principles governing waiver and forfeiture principle applicable to plea agreements." Given the fact that the concurrence was written by Justice Thomas and joined only by Justice Alito, both of whom dissented in both *Miller* and *Montgomery*, I am unpersuaded that this concurrence has any controlling precedential value.

jurisdiction alone cannot be waived or conferred on the court by agreement of the parties."). As the Supreme Court established in *Montgomery*, a trial court lacks the power to impose a sentence of life without parole upon a juvenile offender without first conducting a *Miller* hearing. 577 U.S. ___, 136 S. Ct. at 734-35 (describing a *Miller* hearing as the "procedural requirement necessary to implement a substantive guarantee"). Therefore, the fact that Jones entered into a plea agreement and stipulated to a life sentence without parole is irrelevant, as neither action is sufficient to confer upon a trial court the power to render a sentence which it constitutionally has no authority to impose. I do not believe that our Commonwealth can continue to enforce a punishment that the Supreme Court has determined to be prohibited by the Constitution.

## IV. Void ab Initio

The majority takes the position that not all constitutional violations render a conviction/sentence void ab initio, rather "[c]ertain types of constitutional errors render convictions 'void,' i.e., voidable, and thus subject to collateral attack in federal *habeas* proceedings." While it is true that certain types of constitutional errors only render a sentence or conviction voidable, it is equally true that other types of constitutional errors render a conviction or sentence void ab initio. Under this Court's precedent, as well as the plain language of *Montgomery*, the constitutional error at issue in the present case (i.e., a violation of a substantive rule of constitutional law) clearly falls into the latter category of error, not the former.

> The distinction between an action of the court that is void ab initio rather than merely voidable is that the former involves the underlying authority of a court to act on a matter whereas the latter involves actions taken by a court which are in error. An order is void ab initio if entered by a court in the absence of jurisdiction of the subject matter or over the parties, *if the character of the order is such that the court had no power to render it*, or if the mode of procedure used by the court was one that the court could "not lawfully adopt."

40

*Singh v. Mooney*, 261 Va. 48, 51-52, 541 S.E.2d 549, 551 (2001) (quoting *Evans v. Smyth-Wythe Airport Comm'n*, 255 Va. 69, 73, 495 S.E.2d 825, 828 (1998)) (footnote omitted) (emphasis added).

As previously explained, "[a] conviction or sentence imposed in violation of a substantive rule is not just erroneous but contrary to law and, as a result, void." *Montgomery*, 577 U.S. at ___, 136 S. Ct. at 731. Here, it is unequivocal that "*Miller* announced a substantive rule of constitutional law." *Montgomery*, 577 U.S. ___, 136 S. Ct. at 734. It is equally clear that the substantive rule announced in *Miller* must be given "retroactive effect regardless of when a conviction became final" because "[s]ubstantive rules . . . set forth categorical constitutional guarantees that place certain criminal laws and punishments *altogether beyond the State's power to impose*." *Id.* at 729 (emphasis added). Indeed, as the Supreme Court has explained, when applying substantive rules of constitutional law retroactively, the general approach is that "prior inconsistent judgments or sentences [are] void ab initio." *United States v. Johnson*, 457 U.S. 537, 550 (1982) (citing *Moore v. Illinois*, 408 U.S. 786, 800 (1972) and *Ashe v. Swenson*, 397 U.S. 436, 437, n. 1 (1970)). *Montgomery* established that, in the absence of a *Miller* hearing, a trial court lacks the power to sentence a juvenile to life without parole. Therefore, in my opinion, any sentence imposed in a manner inconsistent with the substantive constitutional rule announced in *Miller* is void ab initio.[8] *See id.*

_____

[8] In my opinion, the majority reads too much into the alternative remedy offered by the Supreme Court in *Montgomery*, i.e., that "[a] State may remedy a *Miller* violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them." 577 U.S. ___, 136 S. Ct. at 736. The fact that the Supreme Court suggested a remedy that some states "may" be able to take advantage of is not irreconcilable with my contention that a sentence of life without parole imposed on a juvenile offender is void ab initio in the absence of a *Miller* hearing. For example, other states may have mechanisms in place that automatically reduce a sentence deemed unconstitutional. Regardless, the Supreme Court's language is merely a suggestion; it is not binding on the states. Indeed, as the Supreme Court explained:

Rather than address the constitutional infirmity of Jones's sentence, the majority focuses on the trial court's power to impose the sentence under Virginia law. According to the majority, a sentence is *only* void ab initio if it is imposed in violation of the range of punishment prescribed by Virginia law. While it is well established that "a sentence imposed in violation of a prescribed statutory range of punishment is void ab initio," *Grafmuller v. Commonwealth*, 290 Va. 525, 529, 778 S.E.2d 114, 116 (2015) (quoting *Rawls*, 278 Va. at 221, 683 S.E.2d at 549), nothing in our jurisprudence supports the majority's contention that a statutory violation is the *only* basis for rendering a sentence void ab initio.[9]

## V. Motion to Vacate

According to the majority, a motion to vacate is not the proper vehicle for Jones's claim because there is no precedent under Virginia law for using a motion to vacate to collaterally

---

> When a new substantive rule of constitutional law is established, this Court is careful to limit the scope of any attendant procedural requirement to avoid intruding more than necessary upon the States' sovereign administration of their criminal justice systems. Fidelity to this important principle of federalism, however, should not be construed to demean the substantive character of the federal right at issue.

*Id.* at ___, 136 S. Ct. at 735 (citation omitted).

Furthermore, it is worth noting that the suggestion offered by the Supreme Court was a means by which a state could avoid resentencing. However, assuming parole eligibility was or could be extended to a juvenile offender convicted of a Class 1 felony (such an eventuality is highly unlikely, given that parole is abolished in this state), such a sentence modification would, ultimately, equate to a resentencing.

[9] It is worth noting that, on at least one occasion, this Court has, acting *sua sponte*, set aside a sentence that had been rendered unconstitutional by the Supreme Court in an unrelated case. In *Hodges v. Commonwealth*, 213 Va. 316, 317, 191 S.E.2d 794, 795 (1972), the appellant appealed his death sentence to this Court. After the appellant's writs of error had been granted, none of which attacked the constitutionality of the sentence, the Supreme Court decided *Furman*. *Id.* at 320, 191 S.E.2d at 797. Recognizing that the appellant's death sentence was "nullified" by the Supreme Court's decision, this Court remanded the matter "for a new trial on the issue of punishment." *Id.* at 321, 191 S.E.2d at 798.

42

attack a conviction or sentence based solely on federal constitutional grounds.  In the absence of such precedent, the majority asserts that a motion to vacate "is not a state collateral review proceeding 'open to a claim controlled by federal law.'"  (Quoting *Montgomery*, 577 U.S. ___, 136 S. Ct. at 740.)  In taking this position, however, the majority ignores a fundamental tenet of our jurisprudence: a void ab initio order may be attacked in any manner at any time.  *Singh*, 261 Va. at 52, 541 S.E.2d 551.

> The lack of jurisdiction to enter an order . . . renders the order a complete nullity and it may be "impeached directly or collaterally by all persons, anywhere, at any time, or in any manner."

*Id.* (quoting *Barnes v. American Fertilizer Co.*, 144 Va. 692, 705, 130 S.E. 902, 906 (1925)).

*See also Thacker v. Hubard & Appleby, Inc.*, 122 Va. 379, 386, 94 S.E. 929, 930 (1918) ("Objection for want of jurisdiction of the subject matter may be taken by demurrer, or motion, or in any way by which the subject may be brought to the attention of the court.").

Indeed, contrary to the majority's assertion, the Supreme Court's holding in *Montgomery* is not limited to only those collateral proceedings that are "open to a claim controlled by federal law."  Rather, the Supreme Court explained that an unconstitutional sentence may be attacked in *any* type of postconviction proceeding where an unlawful sentence may be challenged.

> A penalty imposed pursuant to an unconstitutional law is no less void because the prisoner's sentence became final before the law was held unconstitutional.  There is no grandfather clause that permits States to enforce punishments the Constitution forbids.  To conclude otherwise would undercut the Constitution's substantive guarantees.  Writing for the Court in *United States Coin & Currency*, Justice Harlan made this point when he declared that "[n]o circumstances call more for the invocation of a rule of complete retroactivity" than when "the conduct being penalized is constitutionally immune from punishment."  401 U.S. at 724. *United States Coin & Currency* involved a case on direct review; yet, for the reasons explained in this opinion, the same principle should govern the application of substantive rules on collateral review.  As Justice Harlan explained, where a State lacked the

43

power to proscribe the habeas petitioner's conduct, "it could not constitutionally insist that he remain in jail." *Desist v. United States*, 394 U.S. 244, 261, n. 2 (1969) (Harlan, J. dissenting). If a State may not constitutionally insist that a prisoner remain in jail on federal habeas review, it may not constitutionally insist on the same result in its own postconviction proceedings. Under the Supremacy Clause of the Constitution, state collateral review courts have no greater power than federal habeas courts to mandate that a prisoner continue to suffer punishment barred by the Constitution. If a state collateral proceeding is open to a claim controlled by federal law, the state court "has a duty to grant the relief that federal law requires." *Yates v. Aiken*, 484 U.S. 211, 218 (1987). *Where state collateral review proceedings permit prisoners to challenge the lawfulness of their confinement, States cannot refuse to give retroactive effect to a substantive constitutional right that determines the outcome of that challenge.*

*Montgomery*, 577 U.S. at ___, 136 S. Ct. at 731-32 (emphasis added).

This Court has recognized that prisoners may challenge the lawfulness of their confinement using a motion to vacate. *See Rawls*, 278 Va. at 218, 683 S.E.2d at 547 (holding that a motion to vacate is the appropriate procedural device to challenge a conviction or sentence that is void ab initio and that such a conviction or sentence may be corrected at any time). While it is true that *Rawls* and its progeny all involved sentences in excess of a statutory limitation, the underlying rationale must also apply to sentences in violation of a substantive rule of constitutional law because in both situations, a court is imposing a sentence it is without power to impose, thereby rendering the sentence void ab initio. *Compare Rawls*, 278 Va. at 221, 683 S.E.2d at 549 (explaining that the reason such sentences are void ab initio is because "the character of the judgment was not such as the [C]ourt had the power to render") *with Montgomery*, 577 U.S. ___, 136 S. Ct. at 739 (holding that sentences imposed in violation of a substantive rule of constitutional law are "altogether beyond the State's power to impose"). Indeed, "[a] nullity is a nullity, and out of nothing[,] nothing comes. *Ex nihilo nihil fit* is one maxim that admits of no exceptions." *Harrell v. Welstead*, 175 S.E. 283, 285 (N.C. 1934).

44

Accordingly, the underlying rationale of why a sentence is void ab initio cannot and does not dictate the manner in which such a sentence may be attacked. If a prisoner may use a motion to vacate to challenge a void ab initio sentence because it was imposed in violation of a statute, logic dictates that the same procedural device can be used to challenge a void ab initio sentence imposed in violation of the Constitution.

Furthermore, contrary to the majority's statement, there is precedent under Virginia law for using a motion to vacate to collaterally attack a conviction or sentence based on federal constitutional grounds. In *Loving v. Commonwealth*, 206 Va. 924, 925, 147 S.E.2d 78, 79 (1966), just under five years after they had pled guilty, Richard and Mildred Loving used a motion to vacate to challenge the constitutionality of Virginia's miscegenation statute.

The majority dismisses the precedential value of *Loving* by noting that the propriety of using a motion to vacate to collaterally attack a conviction or sentence based solely on federal constitutional grounds was not litigated. In other words, the majority intimates that the Lovings' claim should have been procedurally defaulted and dismissed by Virginia's courts before the matter reached the Supreme Court, because, in Virginia, a motion to vacate cannot be used to collaterally attack a constitutionally invalid conviction.

Our ruling in *Hirschkop v. Commonwealth*, 209 Va. 678, 166 S.E.2d 322 (1969), clearly indicates otherwise. As the majority notes, in *Hirschkop* this Court addressed the use of a motion to vacate in *Loving*. *Id.* at 681, 166 S.E.2d at 324. However, the majority overlooks the fact that, in concluding that the use of a motion to vacate was inappropriate in *Hirschkop*, the Court expressly distinguished *Loving* on several bases. *See id.* ("[*Loving*] is not apposite to [Hirschkop's] case."). The most important difference noted by this Court was that "in *Loving*, the statute under which the conviction was had was attacked as violative of the Constitutions of

45

Virginia and of the United States, and the sentences imposed were attacked as invalid." *Id.* This basis for differentiating *Loving* is very similar to the argument raised by Jones in the present case.

The majority's concerns that "the multitude of substantive and procedural requirements in habeas corpus law would be permanently sidelined" are unfounded. Jones is not seeking to subvert our habeas corpus law. Nor is he seeking to use a motion to vacate "as an all-purpose pleading for collateral review of criminal convictions." Rather, Jones is simply using a motion to vacate to apply Virginia law in the manner this Court announced close to a century ago in *Thacker*: to bring a void ab initio order to the court's attention. 122 Va. 379, 386, 94 S.E. 929, 930 (1918) ("Objection for want of jurisdiction of the subject matter may be taken by demurrer, or motion, or *in any way by which the subject may be brought to the attention of the court*.") (emphasis added). *See also Rawls*, 278 Va. at 218, 683 S.E.2d at 547 (recognizing that a motion to vacate is the proper vehicle to challenge a void ab initio sentencing order); *Singh*, 261 Va. at 52, 541 S.E.2d 551 ("The lack of jurisdiction to enter an order . . . renders the order a complete nullity [that] may be impeached directly or collaterally by all persons, anywhere, at any time, or in any manner.").

The majority's analysis concludes that individuals such as the Lovings and Jones have no avenue for relief in Virginia courts, more than two years after their convictions become final, even if they can clearly prove that their sentences were imposed in violation of a recently determined substantive constitutional right. I disagree with this previously unexpressed restriction on the ability of Virginia state courts to address the retroactive application of new

46

substantive constitutional rulings, because it is clearly inconsistent with our prior cases.[10] *See, e.g., Loving*, 206 Va. at 926, 147 S.E.2d at 80; *Hirschkop*, 209 Va. at 681, 166 S.E.2d at 324; *Hodges v. Commonwealth*, 213 Va. 316, 317, 191 S.E.2d 794, 795 (1972).

## VI. Conclusion

Although I believe that the law in this case is clear, the facts are another matter.[11] Both parties agree that the record in the present case is incomplete and, therefore, it is unclear whether Jones received a *Miller* hearing before he was sentenced. As such, both parties request that the matter be remanded to the circuit court for further development of the facts surrounding the imposition of Jones's sentence of life without parole to determine whether he received the requisite hearing. In my opinion, this is the best course of action to ensure the constitutionality of the sentence imposed. If the circuit court determines that Jones did, in fact, receive a *Miller* hearing, then his motion to vacate would be properly denied. On the other hand, if it is determined that Jones did not receive a *Miller* hearing, his sentence of life in prison without parole would be void ab initio and he would be entitled to a new sentencing hearing that complies with *Miller* and *Montgomery*. Accordingly, I would vacate the circuit court's decision to deny Jones's motion to vacate and remand the matter for further proceedings to determine whether Jones was properly sentenced on his capital murder charge.

[10] The majority asserts that individuals such as the Lovings and Jones may only challenge their convictions "either via direct appeal timely made or in a habeas corpus proceeding," even if the Supreme Court retroactively determines their substantive constitutional rights were violated. Unstated by the majority is that a direct appeal must be noticed within 30 days of a final judgment and any habeas action is barred if not pursued within two years of a final judgment. Thus, according to the majority, any substantive constitutional rights determined to exist more than two years after conviction may not be successfully vindicated in a Virginia court. Individuals such as Jones, even if they prove that they were sentenced in violation of their substantive constitutional rights, can only apply for relief from a federal court.

[11] Even if *Miller* and *Montgomery* did not expressly require the facts surrounding Jones's sentencing be reconsidered, I would hold that juveniles in Virginia facing a sentence of life without parole should be afforded a *Miller* hearing, for the reasons stated in *Montgomery*.