# COURT OF APPEALS OF VIRGINIA

**Record No. 0450-25-4**

CHRISTOPHER ANDREW CRAIG

v.

COMMONWEALTH OF VIRGINIA

Present: Judges Friedman, Chaney and Duffan

Argued at Fredericksburg, Virginia

Opinion Issued June 9, 2026[*]

### FROM THE CIRCUIT COURT OF CULPEPER COUNTY
Dale B. Durrer, Judge

Christian A. Brashear for appellant.

Katherine Quinlan Adelfio, Senior Assistant Attorney General (Jason S. Miyares,[1] Attorney General, on brief), for appellee.

### MEMORANDUM OPINION BY
### JUDGE KEVIN M. DUFFAN

Christopher Craig appeals two convictions: the first of aggravated sexual battery by a stepparent and the second of object sexual penetration of a child under the age of 13 years by an adult over the age of 18 years. The circuit court sentenced Craig to the mandatory minimum of life imprisonment, plus 20 years, with 20 years suspended. On appeal, Craig contends that the circuit court erred in finding that the victim was under the age of 13 years when he committed the offenses against her. He also argues that the circuit court erred when it granted the Commonwealth's motion to reconsider his sentence and when it sentenced him to life

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

imprisonment.  Finally, Craig challenges the circuit court's order that banned contact between him and the victim's family, other than his wife.

Finding no error in Craig's convictions or mandatory life sentence, we affirm those portions of the judgment.  We also conclude that the circuit court acted within its discretion by imposing a no-contact condition protecting C.W., C.W.'s family and household members, and Craig's biological children while they remain minors.  However, because the condition, as written, imposes an unrestricted lifetime prohibition on Craig's contact with his biological children, we vacate that condition in part and remand for further proceedings not inconsistent with this opinion.

## BACKGROUND

We recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court."  *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)).  In doing so, we discard any evidence that conflicts with the Commonwealth's evidence, and regard as true all the credible evidence favorable to the Commonwealth and all inferences that can be fairly drawn from that evidence.  *Cady*, 300 Va. at 329.

Craig married C.W.'s[2] mother, Nadia, when C.W. was about four years old.  Craig and Nadia also had two younger children together, and Nadia had an older son who moved out prior to the initiation of the present charges.  C.W. knew Craig as her stepfather for her "whole life."

In August 2019, C.W. entered sixth grade when she was 12 years old.  When she was "twelvish," Craig began touching her "everywhere," including her vagina, "inappropriately" and "sexual[ly]."  The physical and emotional sexual abuse escalated and the two began having

---

[2] We refer to the victim by her initials to protect her privacy.

- 2 -

sexual intercourse at least once a week when C.W. was 14 years old. She referred to Craig as her boyfriend, and they exchanged notes and gifts.

Nadia discovered the relationship when she found text conversations and "inappropriate" photographs between C.W. and Craig on C.W.'s phone. C.W. was 15 years old at the time of this discovery. The sexual relationship had "been going on for a while." Nadia took C.W. to the police to report the relationship. During a recorded interview at the police station, C.W. said that she and Craig had had intercourse two days earlier. C.W. then underwent a forensic examination by a sexual assault nurse examiner (SANE). She told the examiner that Craig performed oral sex on her and penetrated her vaginally two days before the exam. Craig was subsequently charged with object sexual penetration of a child under 13 years old and aggravated sexual battery as a stepparent.

At trial, C.W.[3] initially said that in 2021, Craig started touching her "inappropriately" "pretty much everywhere," including her vagina. The abuse occurred in the family home. After reviewing her forensic interview, however, C.W. clarified that the touching began in 2019 when she was "around twelvish." Her birth certificate and school records confirmed that in 2019, she was in the sixth grade, had just started middle school, and was 12 years old. C.W. testified that Craig touched her genitals over her clothes but progressed to "putting his hands down [her] pants." The "fondling" began when C.W. sat in Craig's lap. He rubbed, stroked, and eventually penetrated her vagina using his hands.

Detective Sisk testified and detailed his interview with Craig. In the interview, Craig confirmed that he and C.W. were in a "boyfriend/girlfriend," "physical, sexual" relationship. Craig said that when it started, he would "touch her in the vaginal area." When Detective Sisk asked Craig what C.W.'s age was when the touching started, Craig said between 13 and 14, but

---

[3] C.W. was 17 years old at the time of the trial.

- 3 -

later clarified that she was in the sixth grade and between 12 and 14 years old. Detective Sisk said that Craig was forthcoming during the interview about the details of the sexual abuse, saying that he initially touched C.W. over her clothing and progressed to "skin on skin" contact and penetration of her vagina with his fingers. Craig wrote a statement during the interview, which was admitted into evidence at trial. In the statement he wrote that C.W. was "12 or 13" when he started giving her more attention because she was "feeling depressed." Craig claimed that she started "rubbing around" when she sat in his lap and their sexual interactions got more physical as time went on. They began having sexual intercourse when C.W. was 14 years old. At the end of the interview, Detective Sisk asked Craig if C.W. was 12 years old when the sexual relationship began, and he said yes. Craig also confirmed that C.W. was in the sixth grade at the time.

Craig testified that the "incidents" with C.W. started at the end of her seventh grade year, which "should've been 2021," when C.W. was 13 years old. Craig acknowledged that he had agreed with Detective Sisk during the interview that she was 12 years old but did not remember making a statement about C.W.'s grade and later said that he only agreed with the officer's suggestion because he was "attempting to cooperate." He said the sexual relationship with C.W. was "mutual," but he understood that she was underage and that she was his stepdaughter. Craig denied that Detective Sisk mentioned C.W.'s grade during the interview; however, after watching his recorded interview at trial, he agreed that he "saw [him]self nod and say, okay, yes" when Detective Sisk said he had reason to believe that C.W. was in the sixth grade when the touching started.

After both parties concluded presenting evidence, the circuit court found Craig guilty of aggravated sexual battery and object sexual penetration of a minor less than 13 years old. The circuit court noted that it found Detective Sisk credible and discarded all evidence in conflict

- 4 -

with his testimony. The circuit court added that it did not find Craig was credible when speaking about the "timeline."

The circuit court initially sentenced Craig to life imprisonment with all but 20 years suspended on his conviction of Code § 18.2-67.2, and to 20 years with 10 years suspended on his conviction of Code § 18.2-67.3. It also banned Craig from having contact with C.W. and unsupervised contact with minors and set other conditions of the suspended portions of the sentence. But before the court entered a final order, the Commonwealth moved to reconsider the sentence, arguing that the circuit court was required to impose the mandatory minimum sentence of life imprisonment with no time suspended. The circuit court issued an opinion letter in which it provided its legal reasoning for suspending a portion of Craig's sentence under Code § 18.2-67.2 but took the Commonwealth's motion to amend sentence under advisement, stayed entry of the sentencing order, and invited counsel to submit supplemental memoranda.

In its opinion letter, the circuit court relied on *Jones v. Commonwealth*, 293 Va. 29, 40-41 (2017), for the proposition that life sentences can be suspended if the statute does not preclude the court from doing so. However, the circuit court also noted that it was "conflicted" because *Jones* cites Code §18.2-61(B)(2) in a footnote as an example of a life sentence that *cannot* be suspended, and the language is "almost identical to" that in Code § 18.2-67.2.

At the hearing on the motion to reconsider sentence, the circuit court determined that it "got [the sentence] wrong," that it had "made a mistake in interpreting the law," and explained that it had "absolutely no discretion in suspending any portion of a mandatory minimum sentence." It found that "Virginia law requires a mandatory life sentence" for a conviction on "sexual object, sexual penetration [that] involves a child under the age of [13]." Craig "note[d] [his] objections to this ruling going forward," and argued against restricting Craig from contacting C.W. The circuit court then sentenced Craig to life imprisonment for object sexual

penetration of a minor less than 13, and to 20 years for aggravated sexual battery, with all 20 years of that sentence suspended.

The circuit court then imposed conditions on the suspended sentence, ordering Craig to have "no contact, directly or indirectly, with the victim in this case or any of her household or family members." When the Commonwealth asked whether that condition included Nadia, C.W.'s mother and Craig's wife, defense counsel explained that Nadia did not want Craig to return to the household but needed to communicate with him about the home, which remained in Craig's name, and other financial issues. The court removed Nadia from the no-contact provision. However, the court left the restriction in place "in terms of . . . the victim, and any other relative of the victim." Craig objected that the condition would prohibit contact with his biological children because they were related to C.W. In response, the circuit court stated that the facts were "chilling" because they showed, "a tremendous amount of reflection, thought, planning, [and] pre-deliberation."

Before continuing, the court noted that what it was "about to say [was] only an observation, [and] not tied to this case in any way, shape, or form." It proceeded to explain that while "Virginia has not adopted Rules 410, 411, and 412 of the . . . Federal Rules of Evidence," the federal rules "basically say, that in a sexual assault case, anything the defendant has ever done comes in as character evidence, not subject to a 403 balancing test." The circuit court attributed this framework of the rules to "a litany of experts who testified that this is not the first time somebody does this. It's just the first time that they get caught." The circuit court clarified that it was "not implying that here, but [it thought that it was] an interesting observation as to why the Federal Rules of Evidence have basically thrown out 403 in any balancing test as it

relates to character of defendants accused of sexual assault." The court concluded by stating that it had an "obligation to protect" C.W. and "any potential victims and any family member."[4]

ANALYSIS

I. The evidence was sufficient for the circuit court to find that C.W. was under 13 years old when the abuse began.

"When an appellate court reviews the sufficiency of the evidence underlying a criminal conviction, its role is a limited one." *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024). Appellate courts do not determine whether the evidence establishes the defendant's "guilt beyond a reasonable doubt because as an original proposition it might have reached a different conclusion." *Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (quoting *Cobb v. Commonwealth*, 152 Va. 941, 953 (1929)).

"The only 'relevant question is, after reviewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Cappe v. Commonwealth*, 304 Va. 86, 87 (2025) (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)). Indeed, "[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is 'plainly wrong or without evidence to support it.'" *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting Code § 8.01-680).

Additionally, "[t]he credibility of witnesses and the weight accorded their testimony are matters solely for the fact finder who has the opportunity of seeing and hearing the witnesses."

---

[4] At the time of sentencing, Craig's biological children were twelve and eleven years old. "Although parts of the record are sealed, this appeal requires unsealing certain portions to resolve the issues raised by [the appellant]. To the extent that certain facts are found in the sealed portions of the record, we unseal those portions only as to those specific facts mentioned in this opinion." *Khine v. Commonwealth*, 75 Va. App. 435, 442 n.1 (2022). "The rest remains sealed." *Id.*

*Commonwealth v. Jackson*, 276 Va. 184, 197 (2008) (quoting *Schneider v. Commonwealth*, 230 Va. 379, 382 (1985)).

In this case, Craig contends that the circuit court erred when it determined that C.W. was under the age of 13 years when he sexually abused her. We disagree.

Viewed in totality, C.W.'s testimony, Detective Sisk's testimony, and the documentary evidence are sufficient to support the factual finding that C.W. was under 13 years old when Craig sexually abused her. C.W.'s birth certificate and school records, which were admitted without objection, established that she was 12 years old while she was in sixth grade. According to C.W.'s testimony and Craig's interview with Detective Sisk, the abuse started while she was in sixth grade. C.W., after having her memory refreshed, testified that she was "twelvish" when Craig first put his hands in her pants and rubbed her vagina. Similarly, Detective Sisk, in recounting Craig's statements during their interview, emphasized that Craig acknowledged that C.W. was 12 or 13 years old and in the sixth grade when he began touching her. Craig's voluntary written statement also stated that C.W. was "12 or 13" when he started sexually abusing her. At trial, Craig conceded that he had acknowledged that C.W. was in the sixth grade when the abuse started. This evidence was more than sufficient to prove C.W. was under 13 years old when she was first abused even though Craig offered conflicting testimony at trial.[5]

The circuit court, as the factfinder, determined that Craig was not credible "about the timeline of when it started." It was free to do so. *See Cheatham v. Gregory*, 227 Va. 1, 4 (1984) (stating the trier of fact "must determine the weight of the testimony and the credibility of witnesses"). On appeal, our only role is to examine whether that determination was plainly wrong or without evidence to support it. *See Pijor*, 294 Va. at 512 (noting we do not disturb the

---

[5] Craig testified that C.W. was at least 13 years old when the abuse started and that C.W. was uncertain as to some of the dates at trial.

factfinder's decision unless it is "plainly wrong or without evidence to support it"). It was not. We therefore conclude that the evidence is sufficient to support the circuit court's factual finding that C.W. was less than 13 years old when the offense occurred.

II. The circuit court had no discretion to deviate from the mandatory minimum.

"Statutory interpretation presents a pure question of law and is accordingly subject to de novo review by this Court." *Jones v. Commonwealth*, 296 Va. 412, 414-15 (2018) (quoting *Washington v. Commonwealth*, 272 Va. 449, 455 (2006)). "In interpreting [a] statute, 'courts apply the plain meaning . . . unless the terms are ambiguous or applying the plain language would lead to an absurd result.'" *Taylor v. Commonwealth*, 298 Va. 336, 341 (2020) (alterations in original) (quoting *Baker v. Commonwealth*, 284 Va. 572, 576 (2012)).

Upon a conviction for object sexual penetration where the victim was less than 13 years old and "it is alleged in the indictment that the offender was 18 years of age or older at the time of the offense, the punishment shall include a mandatory minimum term of confinement for life." Code § 18.2-67.2(B)(2). When the General Assembly uses "*mandatory minimum*" in the code, "for purposes of imposing punishment upon a person convicted of a crime," courts are required to "impose the entire term of confinement, the full amount of the fine and the complete requirement of community service prescribed by law." Code § 18.2-12.1 (emphasis added). Courts "shall not suspend in full or in part any punishment described as mandatory minimum punishment." *Id.* As a result of this unambiguous language, we have explained that "[a] trial court's authority to depart downward below a mandatory minimum is 'nonexistent.'" *Commonwealth v. Greer*, 63 Va. App. 561, 573 (2014) (quoting *Lilly v. Commonwealth*, 50 Va. App. 173, 187-88 (2007)).

The statute is clear. Once Craig was convicted of object sexual penetration of a minor less than 13, the circuit court had but one option: impose a life sentence with no time suspended.

Accordingly, the circuit court did not err when it imposed the statutory mandatory minimum sentence.

III. The circuit court did not abuse its discretion by granting the motion to reconsider.

"Motions . . . to reconsider a prior ruling involve matters wholly in the discretion of the trial court." *Thomas v. Commonwealth*, 62 Va. App. 104, 109 (2013). Thus, "whether the court *should* do so is a matter we review under the highly deferential abuse-of-discretion standard." *Id.* at 111. "A motion to reconsider ordinarily asks a court to reconsider a holding because, in the opinion of the movant, the holding was erroneous." *Wal-Mart Stores E., LP v. State Corp. Comm'n*, 299 Va. 57, 76 (2020).

A circuit court abuses its discretion in three primary ways: (1) when it fails to consider a "relevant factor that should have been given significant weight," (2) when it considers and gives significant weight to an irrelevant or improper factor, or (3) when it considers only proper factors, "but the court, in weighing those factors, commits a clear error of judgment." *Murry v. Commonwealth*, 288 Va. 117, 122 (2014) (quoting *Landrum v. Chippenham & Johnston-Willis Hosps., Inc.*, 282 Va. 346, 352 (2011)).

Here, the circuit court did not abuse its discretion. The circuit court did not consider any irrelevant or improper factors, nor did it ignore relevant factors when it granted the motion to reconsider. While Craig asserts that the circuit court should have considered mitigating factors and could "deviate from imposing a life sentence," the circuit court did not have that power. Code § 18.2-67.2(B)(2) and Code § 18.2-12.1 bar any deviation. In granting the Commonwealth's motion to reconsider, the circuit court merely examined whether it had misapplied *Jones*, 293 Va. at 40 n.6. In seeing that it had, the circuit court sought to correct its mistake specifically to avoid making an error of law. Thus, the circuit court certainly did not abuse its discretion by granting the Commonwealth's motion to reconsider.

IV. The no-contact condition is partially unreasonable only as to its duration for Craig's biological children.

"Criminal sentencing decisions are among the most difficult judgment calls trial judges face." *Minh Duy Du v. Commonwealth*, 292 Va. 555, 563 (2016). "Because this task is so difficult, it must rest heavily on judges closest to the facts of the case—those hearing and seeing the witnesses, taking into account their verbal and nonverbal communication, and placing all of it in the context of the entire case." *Id.* For these reasons, determining a sentence "lies within the sound discretion of the trial court." *Garibaldi v. Commonwealth*, 71 Va. App. 64, 67 (2019) (quoting *Martin v. Commonwealth*, 274 Va. 733, 735 (2007)).

"The exercise of judicial discretion presupposes 'that, for some decisions, conscientious jurists could reach different conclusions based on exactly the same facts—yet still remain entirely reasonable.'" *Commonwealth v. Kartozia*, 304 Va. 321, 331 (2025) (quoting *Barney*, 302 Va. at 94). Therefore, "[o]nly when reasonable jurists could not differ can we say an abuse of discretion has occurred." *Bista v. Commonwealth*, 303 Va. 354, 370 (2024) (quoting *Commonwealth v. Swann*, 290 Va. 194, 197 (2015)). At its core, "[t]he abuse of discretion standard draws a line—or rather, demarcates a region—between the unsupportable and the merely mistaken, between the legal error . . . that a reviewing court may always correct, and the simple disagreement that, on this standard, it may not." *Jefferson v. Commonwealth*, 298 Va. 1, 10-11, (2019) (second alteration in original) (quoting *Reyes v. Commonwealth*, 297 Va. 133, 139 (2019)).

Code § 19.2-203 authorizes a sentencing court, after conviction, to suspend all or part of the sentence and place the defendant on probation "under such conditions as the court shall determine." That discretion is broad, but it is not unlimited, and is subject to reasonableness. In *Commonwealth v. Delaune*, 302 Va. 644 (2023), the Supreme Court recognized that "a sentencing court has broad discretion to impose reasonable special conditions of probation and suspension that are tailored to the unique circumstances of a case." *Id.* at 657 (citing *Minh Duy Du*, 292 Va. at 564). The Court

- 11 -

added that "[a]bsent an alleged statutory or constitutional violation, '[t]he sole statutory limitation placed upon a trial court's discretion in its determination of such conditions is one of reasonableness.'" *Id.* at 657 (second alteration in original) (quoting *Minh Duy Du*, 292 Va. at 563). That is, "[p]robation conditions must be reasonable in light of the nature of the offense, the defendant's background, and the surrounding circumstances." *Id.* at 658 (quoting *Murry*, 288 Va. at 122).

Here, the circuit court acted within its discretion by imposing a no-contact condition protecting C.W. and Craig's biological children while those children remain minors. The record showed that Craig sexually abused C.W., his stepdaughter, over time and within the family home. The circuit court found that Craig's conduct reflected a "pattern of escalating behavior that [was] surreptitious, calculating, and manipulative." In denying contact with Craig's biological children and C.W., the circuit court—which was in the best position to weigh the evidence—found that this case was "chilling" because Craig's conduct showed a "tremendous amount of reflection, thought, planning, [and] pre-deliberation." The court also stated that it had "an obligation to protect . . . any potential victims and . . . family member" from Craig. Although the court commented on the Federal Rules of Evidence in its sentencing of Craig, the record does not suggest that the circuit court considered—much less gave significant weight to—whether Craig had abused his biological children. To the contrary, the circuit court specifically explained that it did not consider whether Craig had abused his two biological children by noting that it was "not implying [Craig had a history of sexual abuse] here," and prefaced its discussion by saying that its observation was "not tied to this case in any way, shape, or form." The record reflects that the circuit court's decision to bar contact with his biological children was instead rooted in the "chilling" nature of Craig's abuse. Abuse that, it determined, showed "reflection, thought, planning, [and] pre-deliberation."

The concern is limited to the duration of the no-contact restriction as applied to Craig's biological children. The circuit court first ordered Craig to have "no contact, directly or indirectly, with the victim in this case or any of her household or family members." The court later removed Craig's wife from the no-contact provision but left the restriction in place "in terms of . . . the victim, and any other relative of the victim." Craig objected that this language would bar lifetime contact with his biological children because they were related to C.W.

Although the circuit court's later explanation supports restricting Craig's contact with his biological children while they remain minors, the condition, as written, is not reasonably limited in duration as to those children. The protective rationale supporting the restriction as to those children rests on their status as minor children in the family. That rationale alone does not support an unrestricted lifetime prohibition on contact after they reach the age of majority. To that limited extent, the condition is not reasonable in light of Craig's offenses, his background, and the surrounding circumstances. *See Delaune*, 302 Va. at 657-58; *Murry*, 288 Va. at 122.

Accordingly, we vacate the no-contact condition only to the extent that it imposes an unrestricted lifetime ban on Craig's contact with his biological children. We remand the case to the circuit court for further proceedings to impose a tailored condition not inconsistent with this opinion.[6] On remand, the circuit court may impose any other reasonable condition authorized by law and supported by the record.

CONCLUSION

Therefore, the circuit court's judgment is affirmed in part, vacated in part, and remanded for further proceedings consistent with this opinion.

*Affirmed in part, vacated in part, and remanded.*

---

[6] Nothing in this opinion disturbs the no-contact condition as to C.W., C.W's household or family members other than Craig's biological children, or any restriction designed to prevent Craig from contacting C.W. directly or indirectly.

- 13 -